THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ANTHONY CRANE, Defendant-Appellant.

First District (5th Division)   No. 1—91—1328

Opinion filed March 5, 1993.—Rehearing denied May 26, 1993.—
Modified opinion filed May 28, 1993.

Michael J. Pelletier and Patricia Mysza, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Rebecca Davidson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

After a jury trial, defendant Anthony Crane was found guilty of aggravated arson and first-degree murder and sentenced to natural life imprisonment. On appeal, we consider: (1) whether there was probable cause to arrest defendant; (2) whether the trial court properly instructed the jury; (3) whether the prosecutor made improper comments during closing argument which denied defendant a fair trial; and (4) whether the trial court abused its discretion when it sentenced defendant to natural life imprisonment.

The evidence at trial revealed that on October 15, 1989, defendant and his friend Jim Valek were at William McHugh's tavern when they decided to steal the cash register. Defendant and Valek split the money recovered from the cash register. The following day, defendant and Valek sold the register to a woman named Janette.

After learning that he was a suspect in the robbery which occurred at McHugh's tavern, Valek bought the cash register back from Janette and threw it in the river at Kedzie and 37th Street.

On October 17, 1989, there was a fire at McHugh's tavern and William McHugh died as a result of injuries he received in the fire. When defendant was arrested on October 31, 1989, and questioned, he initially denied any knowledge of the stolen cash register. Defendant was questioned a second time and admitted that he had taken the cash register. He was then asked about the fire and denied any knowledge. During a third conversation, defendant admitted to being present at the time of the fire but stated that it had been an accident. On November 1, 1989, defendant was interviewed by an assistant State's Attorney and signed a handwritten statement. In the statement, defendant admitted that, after hearing rumors that he was suspected of stealing the cash register, he went to McHugh's tavern and told McHugh that he did not steal the cash register. Defendant testified that McHugh did not believe him and slapped him in the face. Defendant stated that he pushed McHugh, who fell to the floor and spilled gas on himself. The argument over the cash register continued as McHugh lay on the floor. Defendant lit a cigarette and then threw the match down near McHugh. McHugh immediately ignited and defendant ran home.

When defendant testified at trial, he denied any knowledge of the fire or the murder of William McHugh. Defendant admitted that he stole the cash register, but claimed that the statement he made was a lie. He claimed he lied because he was afraid that the police officers were going to beat him.

Defendant's first contention is that the trial court erred when it denied defendant's motion to quash arrest and suppress evidence since his warrantless arrest was effected without probable cause. He claims the State did not establish that the dispatcher possessed sufficient facts to direct the arresting officers to act, and that the subsequent plain view seizure of narcotics from defendant was not sufficiently proved.

At the suppression hearing, defendant testified that on October 31, 1989, as he was leaving Jim Valek's apartment at 3045 West 60th Place, he saw a police officer. The officer (who did not identify himself to defendant) asked defendant if his car was blocking the alley. Defendant said that it was. The officer asked defendant for identification. Defendant pulled out of his wallet the ticket that he was driving on. The officer and his partner then frisked and handcuffed him. The officers then took defendant to Valek's apartment, searched the apart-

ment and found a cocaine seal in the coffee table drawer. Jim Valek also testified that the officers found the cocaine seal in the coffee table drawer.

Officer Sepulveda testified that on October 31, 1989, he and Officer Graeber received an assignment from their dispatcher to look for a man wanted for robbery and arson murder. The man was described to the officers by the dispatcher as a white male, driving a blue station wagon with no front fenders. The dispatcher directed the officers to the area of 3150 West 64th Place. When the officers were unable to locate defendant's vehicle at that address, they continued their search until they located the car at 3045 West 60th Place. The officers put the car under surveillance and waited for the driver to return. Jim Valek informed the officers that the car was defendant's and that he would get him. When defendant came into the hallway, the officers asked for his driver's license. Officer Sepulveda testified that when defendant opened his wallet, Officer Graeber observed a small folded packet of cocaine. Officer Graeber did not testify and Officer Sepulveda did not see the packet until Graeber began removing it from defendant's wallet. The officers then searched Valek's apartment but did not recover any other drugs.

Detective O'Meara testified that on October 17, 1989, he was assigned to investigate the arson and homicide that occurred at McHugh's tavern. O'Meara spoke with Raymond Kurecki, who was a friend of McHugh. Kurecki told O'Meara that he had a conversation with McHugh shortly after the robbery. McHugh told Kurecki that one of the people who took the cash register was "Tony," the man who used to work for McHugh. Kurecki told O'Meara that he thought the person McHugh was referring to was Anthony Crane. O'Meara testified that Kurecki told him that he knew Anthony Crane and that Crane drove a blue Datsun station wagon with a front fender missing. Kurecki later identified a photograph of defendant. After learning that defendant lived at 3045 West 60th Place, O'Meara went to that address on October 30 and 31, but he did not find defendant or the car. O'Meara testified that he never discussed his investigation with anybody else on the police force.

■ Based on this testimony, we find that the police lacked probable cause to arrest defendant. When officers are working in concert, probable cause can be established from all the information collectively received by the officers even if that information is not specifically known to the officer who makes the stop. (*People v. Fenner* (1989), 191 Ill. App. 3d 801, 584 N.E.2d 147.) Although an arresting officer may rely upon a dispatch to make an arrest even if he is unaware of

the specific facts that established probable cause to make the arrest, the State must demonstrate that the officer who directed the dispatch to be issued possessed facts sufficient to establish probable cause to make the arrest. *People v. Crowell* (1981), 94 Ill. App. 3d 48, 418 N.E.2d 477.

■ Here, it is clear that O'Meara was not working in concert with the arresting officers on the investigation into the robbery or arson at McHugh's tavern. While O'Meara had knowledge that defendant may have been involved in the robbery of McHugh's tavern, he testified that he never told anybody he was looking for defendant, he did not direct anybody to arrest defendant, and he was not working with the officers who arrested defendant. Furthermore, there is no evidence in the record as to the source of the dispatcher's information. It is clear, however, that the information did not come from O'Meara in light of O'Meara's testimony that he did not tell anybody about the information he possessed on defendant's connection with the crimes. The State argues that the cause and origin report filed by O'Meara stating that the fire was an arson imputes the arresting officers and the dispatcher with knowledge that defendant was a suspect in the arson and the police report on file in the 8th police district imputes them with knowledge that defendant was a suspect in the robbery. These two reports on file at two separate locations within the Chicago police department did not provide probable cause to arrest defendant, particularly because there is no evidence that arresting officers or the dispatcher who directed the officers to look for defendant knew of the existence of these reports. Furthermore, even if they did read these reports, there is no evidence that the cause and origin report identified defendant as the possible arsonist or that the report on file in the 8th district did anything more than state that one of the possible robbery suspects was named Tony.

■ Nor does the evidence provided here establish that the police had probable cause to arrest defendant for possession of a controlled substance. The seizure of evidence under the plain view doctrine requires that: (1) the object seized is in plain view; (2) the officer views the object from a position where he has a right to be; and (3) the facts and circumstances known to the officer at the time he acts give rise to a reasonable belief that the items seized constitute evidence of criminal activity. (*People v. Montgomery* (1980), 84 Ill. App. 3d 695, 405 N.E.2d 1275.) What constitutes probable cause for a seizure must be determined from the standpoint of the officer who made the seizure, with his experience and training in the detection of controlled

726

substances being taken into account. *People v. Stout* (1985), 106 Ill. 2d 77, 477 N.E.2d 498.

■ The evidence presented at the suppression hearing does not establish that the cocaine packet was in plain view when it was seized since Graeber, the officer who made the seizure, did not testify at the suppression hearing. Officer Sepulveda was not competent to testify about what the seizing officer, Officer Graeber, observed at the time of the seizure. Accordingly, there is no evidence in the record as to whether the packet was in Graeber's plain view when it was inside the wallet or what led Graeber to believe that the packet contained cocaine. Sepulveda's testimony cannot be relied on to establish plain view because he did not see the packet until after Graeber began removing it from defendant's wallet.

■ When a confession is obtained from a defendant through custodial interrogation after an illegal arrest, that confession must be suppressed unless the State can establish that intervening events have broken the causal connection between the illegal arrest and the confession so as to render the confession an act of free will. (*People v. Thomas* (1984), 123 Ill. App. 3d 857, 463 N.E.2d 832.) Whether attenuation has been established may be determined by considering whether *Miranda* rights have been given and understood, the time between the arrest and confession, and the presence of intervening circumstances, such as an appearance by the defendant before a magistrate. (*Thomas*, 123 Ill. App. 3d 857, 463 N.E.2d 832.) The State requests that we follow *People v. Booker* (1991), 209 Ill. App. 3d 384, 568 N.E.2d 211, and remand this case for an attenuation hearing. However, under the circumstances of this case, an attenuation hearing is unnecessary. The State has given us no indication of what additional evidence it is capable of adducing on remand to establish that the arrest and statement were attenuated. Rather, the State insists that the record here is more than adequate to establish attenuation. From this record, we conclude that although defendant was given *Miranda* warnings several times, neither the length of time nor intervening circumstances dissipated the taint of defendant's illegal arrest. Therefore, we find that because the trial court improperly denied defendant's motion to suppress his statement, this case must be remanded for a new trial.

■ Defendant next maintains that the trial court erred in instructing the jury to consider, first, whether the State had proven defendant guilty of aggravated arson; second, whether defendant has been proven guilty of felony murder; and third, whether defendant has been found guilty of the two other first-degree murder charges.

Then, if defendant is found not guilty of all the other charges, the jury was instructed to consider whether defendant was guilty of involuntary manslaughter. Defendant now contends that this instruction unduly emphasized the first-degree murder charges over the involuntary manslaughter charge. At the instruction conference, however, defense counsel admitted that there was no pattern jury instruction specifically addressing this situation. Both the State and defendant tendered instructions that instructed the jury to first consider the first-degree murder charge. The court found that both instructions covered the same items, but that the State's instruction was easier for the jury to understand. Although defense counsel objected to the State's instruction, defense counsel's objection was based on the argument that his tendered instruction was clearer and not on the basis that the State's instruction unduly emphasized the more serious charges over the less serious one. Under these circumstances, defendant has waived his right to appeal the issue of the content of the instruction.

■ Defendant next contends that the prosecutor made improper comments in closing argument concerning the charge of involuntary manslaughter. Defendant first takes issue with the prosecutor's comment that:

"Involuntary manslaughter, folks is a reckless act. It's like a car accident. That's for car wrecks. It's an involuntary act."

Defense counsel objected to this comment, but his objection was overruled. The prosecutor in *People v. Gutirrez* (1990), 205 Ill. App. 3d 231, 264, 564 N.E.2d 850, also argued that recklessness was equivalent to accident. The court found the prosecutor's comment improper since recklessness and accident are not synonymous. We reach the same conclusion here.

■ Defendant also alleges error in the prosecutor's characterization of second-degree murder as "something a little less than first degree murder *** a lower offense." An objection to this argument was sustained. The prosecutor then argued that after the jury rejected second-degree murder, it had "to go a step farther" and consider involuntary manslaughter. Defense counsel's objection to this comment was also sustained. We agree with defense counsel that it was improper to apprise the jury of the comparative severity of the defendant's possible sentence. (See *Gutirrez*, 205 Ill. App. 3d at 263 (the prosecutor's reference to involuntary manslaughter as "the lowest class of felony" was improper since the purpose of this comment was to imply that an involuntary manslaughter verdict would result in negligible punishment for the defendant as compared to first-degree

murder).) We therefore find that the prosecutor's comments were improper and should not be repeated at the new trial on remand.

Because we are remanding this case for a new trial, we do not consider whether the trial court, in sentencing defendant to natural life imprisonment, failed to consider defendant's rehabilitative potential.

Accordingly, for the reasons set forth above, this case is reversed and remanded for a new trial.

Reversed and remanded.

GORDON, P.J., and MURRAY, J., concur.