THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. GERALD L. LAWSON, Defendant-Appellee.

First District (3rd Division)   No. 1—97—2943

Opinion filed August 19, 1998.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Jessica R. Ball, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Robert C. Drizin, Assistant Public Defender, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

The People of the State of Illinois appeal from an order of the circuit court of Cook County granting the motion of defendant, Gerald Lawson, to quash his arrest and suppress evidence. For the reasons given below, we affirm.

## FACTS

In March 1996 defendant Gerald Lawson was charged by an 18-count information with one count of robbery (720 ILCS 5/18—1(a) (West 1994)); one count of armed robbery (720 ILCS 5/18—2 (West 1994)); six counts of aggravated battery (720 ILCS 5/12—4(a), (b)(1), (b)(2), (b)(10) (West 1994)); one count of aggravated battery of a senior citizen (720 ILCS 5/12—4.6(a) (West 1994)); one count of aggravated battery with a firearm (720 ILCS 5/12—4.2(a)(1) (West 1994)); seven counts of armed violence (720 ILCS 5/33A—2 (West 1994)); and one count of attempted first degree murder (720 ILCS 5/8—4, 9—1) (West 1994)). In May 1997 defendant filed a "motion to quash arrest and suppress evidence." He argued that his arrest in February 1996 was made without a warrant and his conduct before his arrest "was such as would not reasonably be interpreted by the arresting officers as constituting probable cause that [defendant] had committed or was about to commit a crime." He requested that the circuit court quash his arrest and suppress from introduction into evidence any physical evidence, statements (written, oral or "gestural"), witnesses, and any other "knowledge and the fruits thereof" which had been obtained as the direct or indirect product of his arrest.

The cause came before the circuit court for a hearing on defendant's motion in May 1997. The sole witness to testify at the hearing was Chicago police officer John Griffin. Officer Griffin testified that he was on duty in his marked squad car on February 17, 1996, at approximately 2 p.m. At that time, while in the general area of the intersection of 71st and St. Lawrence Streets, he received a radio message to the effect that a robbery had just occurred at a dry-cleaning store at 6445 Cottage Grove and a man had been shot. He received a description of a "male, black six fee [sic] tall, wearing a dark coat and blue jeans" who had left the scene of the crime headed west on 65th Street from Cottage Grove. He also learned from the broadcast that the offender "had fought with one of the victims and was possibly injured."

Griffin testified that upon receiving the radio message he immediately activated his emergency lights and drove north on St. Lawrence "at a high rate of speed" in order to cut the suspect off on 65th Street. Griffin testified that he arrived at the intersection of 65th and

Champlain Streets within a minute or a minute and a half from the time that he heard the message. When he arrived at that intersection he turned east onto 65th Street.

As Griffin turned onto 65th Street, he observed an approximately 6-foot-tall black male wearing blue jeans and a dark coat, walking westbound on 65th Street nearing Langley Avenue (one block east of him). Griffin identified defendant in court as the person he saw. Where Griffin first saw defendant, he estimated that defendant was no more than 800 feet from the scene of the crime, between one and two minutes after the crime had occurred. When Griffin saw defendant, defendant looked at him and made a "sudden" right turn onto Langley. Griffin turned onto Langley, drove past defendant, exited his vehicle, and told defendant to stop.

Defendant stopped as Griffin requested. Almost simultaneously, a police tactical unit drove up and stopped behind defendant. As Griffin approached defendant, he noticed that defendant had what appeared to be a cut on his forehead, from which he was bleeding, as well as a cut and scratches on his hand, "as if he had been in a fight." The tactical team performed a protective pat-down of defendant, because it had been led to believe that the offender had a weapon. The tactical officers recovered two $20 bills from defendant's pocket, which had what appeared to be blood on them. After the tactical officers had a conversation with defendant, the nature of which Officer Griffin did not recall, they placed defendant in their squad car and transported him back to the scene of the crime. Griffin followed in his own car. He was not certain whether defendant was handcuffed before being placed in the car, but he stated that defendant was not free to leave custody. At the scene of the crime the victims identified defendant.

Griffin admitted that he did not see defendant violate any laws and he did not have an arrest warrant for defendant. He admitted that no weapon had been found on defendant, nor a mask or hat. Griffin admitted having received information over the radio that the offender was possibly wearing a mask; he was uncertain whether he had heard that the offender was wearing a hat. He admitted the incident occurred during the winter and that before defendant was stopped Griffin had received no information about the coat the offender was wearing other than its color. Griffin was not certain whether the tactical officers questioned defendant about the marks on his head or hands before they placed him in their squad car. He admitted that the apparent bloodstains on the money recovered from defendant were one of the reasons that defendant was detained and returned to the scene of the crime.

With the testimony of Officer Griffin defendant rested; the State

presented no evidence. The court stated that it was "bothered" by the fact that there was no evidence as to the basis for the radio broadcast. It noted that "[w]arrantless searches and seizures are presumptively unreasonable and the State bears the burden of showing that warrantless seizure comes with[in] one of [the] exceptions to the warrant requirement." The court stated that it was "unquestionable" that Officer Griffin had a "reasonable and articulable basis for stopping" defendant and subjecting him to a pat-down search, in light of the facts that he was approximately two blocks away from the scene of an armed robbery and met the "broad general description" of the offender. The court stated that it did not "have any problem with this policeman patting the defendant down."

However, the court stated that this analysis was different from an "in pocket search. And it is ludicrous to suggest that he did not go in his pockets. That he felt something and thought it was a weapon that [*sic*] because of course there is no testimony to that effect. And so he searched him. And utilizing the fruit of that search, one might conclude that he arrested him." The court also noted that although the police can rely on radio broadcasts, "that does not mean that Courts can rely upon it without anything else. *** [T]he suppression record must show, the basis of reliability, in some way, other than it came across the radio." The court took the motion under advisement and requested the State to submit authority for the proposition that the arrest could be upheld without proof of the reliability of the underlying broadcast description "even to the extent of a Terry stop. *** I want to know whether or not this suppression record must show, the reliability, the basis of knowledge of [the] person, who supplied that information."

The cause was continued to May 9, then to May 16. The record does not contain any written brief the State may have filed. On May 16 the court sustained defendant's motion "with reluctance" on the basis that (1) there was no evidence in the record to establish "who it was that informed the source officer of the information that was subsequently broadcast," and (2) there was no "basis, at all, for determining the reliability of that person or the adequacy or sufficiency of the description given."

The State's motion for reconsideration was denied, and the State appealed. It argues that the circuit court misconstrued the law and that the arrest was proper because the arresting officer had probable cause to arrest. In the alternative, it argues that defendant's "temporary detention" and transport to the crime scene was "a reasonable seizure that did not violate defendant's Fourth Amendment rights." We affirm.

## ANALYSIS

■ On a motion to suppress, the defendant bears the burden of proof that the search and seizure were unlawful. *People v. Williams*, 164 Ill. 2d 1, 12, 645 N.E.2d 844, 848 (1994). However, "[w]arrantless searches are *per se* unreasonable; thus, when respondent challenges a warrantless search and demonstrates that he was doing nothing unusual at the time of the search, the State must demonstrate the legal justification for the search." *In re C.K.*, 250 Ill. App. 3d 834, 836, 620 N.E.2d 569, 571 (1993). Accord *People v. Rushing*, 272 Ill. App. 3d 387, 390, 649 N.E.2d 609, 611 (1995) ("[o]nce a defendant challenges a warrantless search, it becomes the State's burden" to show that the search is constitutional); *People v. Crowell*, 94 Ill. App. 3d 48, 50, 418 N.E.2d 477, 478 (1981) ("when the evidence demonstrates that the defendant was doing nothing unusual at the time of the arrest and that the arresting officer neither possessed a warrant for the arrest of the defendant nor observed the defendant violate any law, the burden of proving the validity of the arrest shifts to the State"). Trial court rulings with respect to motions to quash arrest and suppress evidence are generally subject to reversal only if manifestly erroneous, although *de novo* review is appropriate when the only question on review is whether the circuit court correctly applied the law to uncontroverted facts. *People v. Krueger*, 175 Ill. 2d 60, 675 N.E.2d 604 (1996).

The State's primary argument is that the circuit court erred in its understanding of the law. It argues that Officer Griffin was entitled to arrest the defendant because "the totality of the facts and circumstances within Officer Griffin's knowledge was sufficient to warrant a reasonable man to believe that defendant committed the armed robbery at the dry cleaning establishment, thereby providing probable cause for defendant's arrest." We disagree, as the State's premise does not support its conclusion.

■ The State is correct in its assertion that an officer will be found to have probable cause to perform a warrantless arrest if " 'a reasonable and prudent man, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense.' " *People v. Tisler*, 103 Ill. 2d 226, 237, 469 N.E.2d 147, 153 (1984), quoting *People v. Wright*, 41 Ill. 2d 170, 174 (1968). However, notwithstanding that probable cause for an arrest *may* be based on information of which the arresting officer does not have personal knowledge, including information received via radio transmission, when the State attempts to justify a warrantless arrest on the basis of a radio bulletin it must establish that *the officer who issued the bulletin* had probable cause to effect an arrest. *People v. Bascom*, 286 Ill. App. 3d 124, 127-28, 675 N.E.2d 1359, 1362 (1997) ("arresting officers may

rely upon dispatches to make arrests even if they are unaware of the specific facts that established probable cause to make the arrest. [Citation.] In such a case, however, the State must demonstrate that the officer who directed the dispatch to be issued possessed facts sufficient to establish probable cause to make the arrest"); *People v. Crane*, 244 Ill. App. 3d 721, 724-25, 614 N.E.2d 66, 69 (1993) ("[a]lthough an arresting officer may rely upon a dispatch to make an arrest even if he is unaware of the specific facts that established probable cause to make the arrest, the State must demonstrate that the officer who directed the dispatch to be issued possessed facts sufficient to establish probable cause to make the arrest"); *People v. Rimmer*, 132 Ill. App. 3d 107, 113, 476 N.E.2d 1278, 1282 (1985) ("[p]olice officers are entitled to act in reliance upon information received in official police communications. [Citations.] To predicate an arrest, however, the communication must be based upon facts sufficient to constitute probable cause for arrest"); *Crowell*, 94 Ill. App. 3d at 50, 418 N.E.2d at 478 ("the State must demonstrate that the circumstances known to other, nonarresting officers, whose report or directions were relied upon by the officer in making the arrest, were sufficient to establish probable cause to arrest the defendant"). See also *People v. Aguilar*, 286 Ill. App. 3d 493, 496, 676 N.E.2d 324, 326 (1997) ("[p]robable cause may derive from information received from official police communications [citation], as well as from an informant's tip, as long as the information is justified by indicia of reliability"); *Tisler*, 103 Ill. 2d at 237, 469 N.E.2d at 153 ("[i]f facts supplied in a particular tip are essential to a finding of probable cause, the tip must meet standards of reliability before the magistrate may consider it in his determination" of probable cause). Only if the officer issuing a radio bulletin has probable cause to effectuate an arrest himself will an arrest by another officer in reliance on the radio bulletin be upheld. As one leading authority has observed, if the rule were otherwise, "an officer or agency possessed of facts insufficient to establish probable cause could circumvent the Fourth Amendment by the simple device of directing or asking some other officer or agency to make the arrest and search." 2 LaFave, Search & Seizure § 3.5(b), at 255-56 (3d ed. 1996) (hereinafter LaFave).

The above cases all directly or indirectly rely upon the seminal case of *Whiteley v. Warden of Wyoming State Penitentiary*, 401 U.S. 560, 28 L. Ed. 2d 306, 91 S. Ct. 1031 (1971), which the circuit court cited in its ruling. In that case a patrolman arrested defendant in reliance on information he had received via a radio bulletin advising police departments that a warrant had been issued for the arrest of defendant and a companion. *Whiteley*, 401 U.S. at 563, 567, 28 L. Ed. 2d at 310, 312, 91 S. Ct. at 1034, 1036. The United States Supreme Court stated that it did not

"question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." *Whiteley*, 401 U.S. at 568, 28 L. Ed. 2d at 313, 91 S. Ct. at 1037.

The Court held that the arrest violated the fourth and fourteenth amendments (U.S. Const. amends. IV, XIV) because "the complaint on which the warrant issued here clearly could not support a finding of probable cause by the issuing magistrate." *Whiteley*, 401 U.S. at 568, 28 L. Ed. 2d at 313, 91 S. Ct. at 1037. The Court subsequently clarified that "*Whiteley* supports the proposition that, when evidence is uncovered during a search incident to an arrest in reliance merely on a flyer or bulletin, its admissibility turns on whether the officers who *issued* the flyer possessed probable cause to make the arrest." (Emphasis in original.) *United States v. Hensley*, 469 U.S. 221, 231, 83 L. Ed. 2d 604, 613, 105 S. Ct. 675, 681 (1985).

The State attempts to distinguish *Whiteley* on the basis that in that case the radio broadcast contained information that a warrant had been issued, unlike the present case. However, *Hensley* did not involve a warrant nor did it limit the *Whiteley* rule to cases where information regarding warrants had been broadcast; we also note that the standards to be applied in determining whether an officer had probable cause to make a warrantless arrest are "at least as stringent as those that guide a magistrate in deciding whether to issue a warrant." *Tisler*, 103 Ill. 2d at 236, 469 N.E.2d at 153. Accordingly, we find the State's distinction unconvincing.

■ As the State did not meet its burden of establishing that the officer issuing the bulletin on which Officer Griffin relied was possessed of facts sufficient to establish probable cause to make an arrest, the court acted correctly in quashing the arrest and suppressing the evidence. It is this failure in proof that distinguishes this case from *People v. Follins*, 196 Ill. App. 3d 680, 554 N.E.2d 345 (1990), upon which the State relies. In *Follins*, analogously to this case, an arresting officer testified at a pretrial hearing on a motion to quash arrest that he stopped defendant because he matched a radio broadcast of a general description (black male offender 5 feet 9 inches tall, weighing 170 pounds, wearing a blue sweat suit). *Follins*, 196 Ill. App. 3d at 684, 554 N.E.2d at 348. The officer stopped the defendant, within

minutes after a robbery, a few blocks from the scene of the crime, as defendant was walking away from the scene. *Follins*, 196 Ill. App. 3d at 692, 554 N.E.2d at 353. However, in *Follins*, unlike this case, both the officer who issued the radio broadcast and the victim of the crime testified at the hearing on the motion to quash arrest; the officer testified that he made the broadcast based on the victim's description of the offenders and the victim testified as to what he had told the officer. *Follins*, 196 Ill. App. 3d at 683-84, 554 N.E.2d at 347-48. It is this latter testimony that differentiates *Follins* from the instant case.

The State also argues that even if we affirm the circuit court's ruling regarding probable cause, we should reverse its order granting the motion to quash and suppress because "the temporary detention of defendant on the street and the subsequent transporting him to the crime scene was a reasonable seizure that did not violate defendant's Fourth Amendment rights." With this contention we also disagree.

A suspect may be transported a short distance for purposes of a showup identification incident to a *"Terry [v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968),] stop" even absent probable cause. *Follins*, 196 Ill. App. 3d at 693, 554 N.E.2d at 354, citing *People v. Lippert*, 89 Ill. 2d 171, 432 N.E.2d 605 (1982). The circuit court's ruling in this case was still correct, however. First, although the State of course need not establish "probable cause" to justify an investigatory *Terry* stop (as opposed to an arrest), the State must still establish " 'enough indicia of reliability [of information on which an arresting officer relies] to justify the officer's forcible stop.' " 4 LaFave § 9.4(i), at 233, quoting *Adams v. Williams*, 407 U.S. 143, 147, 32 L. Ed. 2d 612, 617, 92 S. Ct. 1921, 1924 (1972). The State has failed to justify even a *Terry* stop because it did not present any facts from which it might be inferred that the police who issued the radio bulletin possessed facts that would have justified a stop.

> "[I]f a flyer or [radio] bulletin has been *issued on the basis of* articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop[.] *** If the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment." (Emphasis added.) *Hensley*, 469 U.S. at 232, 83 L. Ed. 2d at 614, 105 S. Ct. at 682 (upholding a *Terry* stop because the officer making the stop relied upon a bulletin which had been issued on a sufficient basis).

See also *People v. Brown*, 88 Ill. App. 3d 514, 519, 410 N.E.2d 505, 509 (1980) (investigatory stops "must be justified with specific facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion"; this may include "information received in of-

ficial police communications," but only "if the requesting agency possessed facts which would warrant the stop"); 4 LaFave § 9.4(i), at 233 (to allow a police bulletin to be accepted "at face value," without any inquiry into the facts underlying it, "could lead to ludicrous results; an officer could not make a stop on the basis of assertions from an anonymous informant made to him, but could bring about a lawful stop by the simple expedient of passing those assertions on to another officer").

Moreover, even if the State had established that the police were justified in conducting a *Terry* stop of defendant, the circuit court clearly found that the two $20 bills which were recovered from defendant had to have been found as the result of a full search, not a "patdown,"[1] and the officer admitted that the discovery of the money with what appeared to be blood thereon formed part of the basis for the decision to return defendant to the scene for the show-up. Thus even if the State had shown that a *Terry* stop was justified, the show-up was based on the unlawful search, and it therefore cannot be condoned as a mere continuation of a valid *Terry* stop.

Finally, the State contends that "the trial court's holding would result in unrealistic police practices; in effect, police would never be able to rely on radio communications in conducting criminal investigations." We disagree. As is clearly established by the authority upon which our result is based, there is no bar to police reliance on radio communications in conducting criminal investigations or in making warrantless stops or arrests. See *Whiteley*, 401 U.S. at 568, 28 L. Ed. 2d at 313, 91 S. Ct. at 1037 (the "police were entitled to act on the strength of the radio bulletin"); *Bascom*, 286 Ill. App. 3d at 127-28, 675 N.E.2d at 1362 ("arresting officers may rely upon dispatches to make arrests even if they are unaware of the specific facts that established probable cause to make the arrest"); *Crane*, 244 Ill. App. 3d at 724-25, 614 N.E.2d at 69 ("an arresting officer may rely upon a dispatch to make an arrest even if he is unaware of the specific facts

---

[1] The State has not argued on appeal that this conclusion was error, nor would we be inclined to reverse the circuit court if the State had so argued. See *People v. Blake*, 268 Ill. App. 3d 737, 740, 645 N.E.2d 580, 583 (1995) ("the continued exploration of a suspect's pocket after the officer concludes that it does not contain a weapon exceeds the scope of a proper *Terry* frisk"); *People v. Creagh*, 214 Ill. App. 3d 744, 748, 574 N.E.2d 96, 98 (1991) (a *Terry* stop and frisk "may not be used as a general search for evidence of criminal activity"; once an officer had determined that the defendant was not carrying a weapon and that the bulge in defendant's pocket was soft, "seizure of the contents of defendant's pocket was beyond the limited scope of the search and was an unlawful intrusion").

that established probable cause to make the arrest"); *Rimmer*, 132 Ill. App. 3d at 113, 476 N.E.2d at 1282 ("[p]olice officers are entitled to act in reliance upon information received in official police communications"). As LaFave observes, under *Whiteley* the police are entitled to act on communications through official channels in the sense that "the arresting officer is himself not at fault and thus should not be held personally responsible in a civil action or disciplinary proceedings if it turns out that there was no probable cause at the source." 2 LaFave § 3.5, at 255.

However, as LaFave further states:

> "[W]hen the question arises in the context of an effort to exclude evidence obtained as a consequence of action taken pursuant to the communication, then the question legitimately is whether the law enforcement system as a whole has complied with the requirements of the Fourth Amendment, which means that the evidence should be excluded if facts adding up to probable cause were not in the hands of the officer or agency which gave the order or made the request." 2 LaFave § 3.5, at 255.

We concur in and support the dichotomy urged by LaFave, which vindicates police reliance on radio dispatches without ultimately eliminating the State's burden to establish probable cause at the source level in a warrantless arrest. This approach recognizes the need to facilitate prompt police action without giving the police license to effectively eliminate the constitutional prerequisite of probable cause by the mere interposition of a radio dispatch. The shortcoming in this case was not in Officer Griffin's actions, as the circuit court took pains to make clear, and not necessarily in any procedure the police department employed. What was lacking was the required proof by the State at the suppression hearing of the basis of the radio bulletin to which Officer Griffin responded.

## CONCLUSION

For the reasons above stated, we affirm the order of the circuit court granting defendant's motion to quash arrest and suppress evidence resulting therefrom.

Affirmed.

LEAVITT, P.J., and BURKE, J., concur.