2020 IL App (4th) 190252

NO. 4-19-0252

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 22, 2020
Carla Bender
4th District Appellate
Court, IL

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Macon County |
| MATTHEW Q. REDDING, | ) | No. 18DT38 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Erick F. Hubbard, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court, with opinion.
Presiding Justice Steigmann and Justice Harris concurred in the judgment and
opinion.

**OPINION**

¶ 1        In January 2018, defendant, Matthew Q. Redding, was charged with one count of

misdemeanor driving under the influence of alcohol (DUI). On January 30, 2018, at approximately

10 p.m., officers stopped defendant's truck near the area of Sliderz Bar and Grill (Sliderz) in

Decatur after being informed defendant was involved in an altercation inside the bar. Other officers

investigating the alleged battery at the bar quickly arrived to speak with defendant. After

demonstrating visible signs of intoxication and showing indicators of impairment on standard field

sobriety tests, defendant was arrested for driving under the influence of alcohol.

¶ 2        In September 2018, defendant filed a motion to quash arrest and suppress evidence,

claiming sheriff's deputies did not have probable cause to stop his vehicle. In November 2018, the

trial court heard and subsequently granted defendant's motion.

¶ 3        On appeal, the State offers three arguments for our consideration: (1) the trial court erred in finding the evidence was insufficient to establish reasonable suspicion for the traffic stop, (2) defendant did not satisfy his burden by proving or making a preliminary showing that police lacked reasonable suspicion for the traffic stop, and (3) it was error for the trial court to exclude evidence under the facts of this case, based on the good faith of the officers.

¶ 4                          I. BACKGROUND

¶ 5        In January 2018, Deputy David Lewallen of the Macon County Sheriff's Department received a radio dispatch identifying defendant as a suspect involved in a bar fight at Sliderz. In addition to identifying defendant's involvement in the altercation, the caller provided dispatch the color, make, and model of defendant's truck and informed them he had left the scene. Approximately six minutes after the call, Deputy Lewallen located the truck traveling near the area of Sliderz, confirmed the truck was registered to defendant, and contacted Deputy Patrick Smith, who was investigating the fight. Deputy Smith directed Deputy Lewallen to stop the truck so Smith could speak to defendant about the bar fight. Within minutes of Deputy Lewallen effectuating a traffic stop on defendant's truck, Deputy Smith and Deputy Megan Burgener, a newly hired officer under Deputy Smith's supervision, arrived on scene. Upon interacting with defendant, Deputy Burgener observed several indicators of alcohol intoxication, conducted field sobriety tests, and arrested defendant for driving under the influence of alcohol as a result of her observations and the test results.

¶ 6        In January 2018, the State charged defendant with one count of driving under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West 2018)). In September 2018, defendant filed a motion to quash arrest and suppress evidence, arguing the police lacked probable cause to effectuate the traffic stop and defendant's statements should be suppressed because of the deputies'

failure to read him *Miranda* warnings. See *Miranda v. Arizona*, 384 U.S. 436 (1966). In response, the State argued probable cause was not the correct standard to determine whether the traffic stop was permissible, contending the question was whether the deputies had a reasonable articulable suspicion to conduct the stop. The State contended they did. Because the trial court found the officers did not have a reasonable articulable suspicion sufficient to justify the stop, it did not reach the merits of the suppression of defendant's statements.

¶ 7                                      A. Motion to Suppress Hearing

¶ 8            In November 2018, defendant's motion to suppress was heard. Before the presentation of evidence, defense counsel conceded the proper standard for evaluating the legality of the traffic stop was whether the deputies had a reasonable articulable suspicion to conduct the stop. The defense called Deputy Lewallen and Deputy Burgener to testify during the hearing. The State recalled Deputy Lewallen in support of its response to the motion.

¶ 9                                      1. *Deputy Lewallen*

¶ 10           On direct examination, Deputy Lewallen testified he received information from dispatch about an altercation at Sliderz, that defendant was a suspect, and defendant left the bar in a black Chevrolet Silverado. While en route to Sliderz, since Lewallen had already been informed the suspect left in his vehicle, he began looking in the area for a vehicle matching the description given. Other officers were sent to Sliderz to investigate. He testified that, once he got behind defendant's truck (a black Chevrolet Silverado), he verified the license plate with dispatch and confirmed it was registered to defendant. He then called Deputy Smith, who was investigating the bar fight, and asked if Deputy Smith wanted him to make a traffic stop on defendant's truck so Smith could talk to defendant about the fight. When asked what Deputy Lewallen's reasonable suspicion was in making a traffic stop on defendant's truck, he stated, "We were called to Sliderz

for a battery they said, between the Redding brothers. That's a possible domestic battery." On cross-examination, he stated the investigation of the battery was still ongoing and he pulled defendant's vehicle over pursuant to that ongoing investigation. When recalled by the State, Lewallen testified he informed defendant why he was being stopped and may have asked if he had been in a bar fight at Sliderz before Deputy Burgener arrived on the scene.

¶ 11                                    2. *Deputy Burgener*

¶ 12            At the time of the traffic stop, Deputy Burgener had been with the Macon County Sheriff's Department for approximately four months. She was still working under the supervision of Deputy Smith, who was her field training officer. She testified she was called to back up Deputy Lewallen regarding a traffic stop. She was aware the original call involved a bar fight at Sliderz between the Redding brothers. Upon her arrival at the traffic stop, she approached defendant and "immediately" noticed signs of impairment and began conducting a DUI investigation. On cross-examination, she testified she began focusing on a possible DUI after observing defendant had "slowed movements, slurred speech, bloodshot eyes, indicators of being intoxicated."

¶ 13            Defendant argued the deputies who stopped him did not have a "reasonable suspicion" because "in order for a police officer to stop that person [(a suspect who has left the scene),] they have to have something unfold in front of them that gives them reasonable suspicion to believe that a crime has been committed." Defendant argued because Deputy Lewallen did not have reasonable suspicion that a crime was unfolding in front of him, Deputy Lewallen should have "s[a]t back and watch[ed] [to] see if he could observe a traffic violation" and, without more, there was no basis to stop defendant's vehicle.

¶ 14            The State argued Deputy Lewallen received a call from dispatch that defendant and his brother were in an altercation at Sliderz and the reason Deputy Lewallen made a traffic stop on

defendant's truck was to help investigate that report. The stop was based on an ongoing investigation. The State disagreed with counsel's argument that the criminal activity had to reveal itself or unfold in front of the officer in order to have a reasonable suspicion. Regardless of whether Lewallen had probable cause to believe defendant had committed a battery, "he had reasonable suspicion to investigate." The State noted the officers were entitled to rely on the information they were given, even if it proved to be incorrect. "Someone called and complained about a domestic dispute that occurred at Sliderz. Someone had given someone at dispatch or another officer information to lead them to believe that it was the defendant who was involved in the fight, and that's clearly enough for reasonable suspicion." After arguments, the trial court took the matter under advisement.

¶ 15        In March 2019, the trial court issued its written order finding "defendant made a *prima facie* showing that Deputy Lewallen lacked reasonable articulable suspicion to temporarily detain defendant." The court explained Deputy Lewallen did not see defendant violate any traffic laws and the only reason for the stop was due to defendant's alleged involvement in a bar fight with his brother. Furthermore, the court noted that neither of the deputies called to testify identified the complainant of the alleged battery or articulated any facts involving the alleged battery, and neither witness went to investigate the alleged battery. The court found the sole basis for the stop was a dispatch indicating defendant was involved in a bar fight and that neither witness "offered testimony or facts sufficient to establish reasonable and articulable suspicion to make a *Terry* stop of defendant." See *Terry v. Ohio*, 392 U.S. 1 (1968). As a result, the court found the State failed to meet its burden. The court further opined that, if the State had called Deputy Smith, who was detailed to investigate defendant's alleged involvement in a bar fight, or the dispatcher who relayed the information concerning the bar fight to Deputy Lewallen, then the State *may have* provided

facts and testimony sufficient to establish a reasonable articulable suspicion to make the stop. Finally, the court stated the complainant was not identified and therefore was "effectively anonymous" and an anonymous tip, without more, could not provide reasonable suspicion of criminal activity. See *People v. Holmes*, 2019 IL App (1st) 160987, ¶ 2, 125 N.E.3d 1268.

¶ 16   This appeal followed.

¶ 17          II. ANALYSIS

¶ 18        A. Motions to Suppress

¶ 19   The defendant bears the burden of proof at a hearing on a motion to suppress. *People v. Brooks*, 2017 IL 121413, ¶ 22, 104 N.E.3d 417. It is the responsibility of the defendant to make a *prima facie* showing the evidence was obtained by an illegal search or seizure. *People v. Gipson*, 203 Ill. 2d 298, 306-07, 786 N.E.2d 540, 545 (2003). The Illinois Supreme Court discussed what constitutes a *prima facie* case—albeit in the context of a defendant seeking rescission of a statutory summary suspension of his driver's license—in *People v. Relwani*, 2019 IL 123385, 129 N.E.3d 1222. Our supreme court first noted, "in rescission cases we apply the same standard of review used in appeals of suppression motion rulings." *Relwani*, 2019 IL 123385, ¶ 18. The court further explained how, in making a *prima facie* case, the defendant "has the primary responsibility for establishing the factual and legal bases for the requested action." (Internal quotation marks omitted.) *Relwani*, 2019 IL 123385, ¶ 17. It went on to define a *prima facie* case as one where the party having the burden produces "enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." (Internal quotation marks omitted.) *Relwani*, 2019 IL 123385, ¶ 18. Within the context of a suppression hearing, once the defendant does so, the burden of proceeding, or going forward with the evidence, shifts to the State to present evidence to counter defendant's *prima facie* case. *Gipson*, 203 Ill. 2d at 307. The ultimate burden of proof

remains, however, with the defendant. *People v. Brooks*, 2017 IL 121413, ¶ 22, 104 N.E.3d 417. Applying a two-part analysis when reviewing a trial court's ruling on a motion to suppress evidence, we review the trial court's factual findings under the manifest weight of the evidence standard and then apply the *de novo* standard of review to the court's ultimate legal ruling on whether the evidence should be suppressed. *Brooks*, 2017 IL 121413, ¶ 21.

¶ 20                                    B. Vehicle Stops

¶ 21        The ultimate touchstone of the fourth amendment is "reasonableness," and vehicle stops are subject to that same reasonableness requirement. *Whren v. United States*, 517 U.S. 806, 810 (1996). Since "the usual traffic stop is more analogous to a *Terry* investigative stop than to a formal arrest," "courts generally analyze fourth amendment challenges to the reasonableness of traffic stops under *Terry* principles." *People v. Jones*, 215 Ill. 2d 261, 270, 830 N.E.2d 541, 549 (2005); see also *Terry v. Ohio*, 392 U.S. 1 (1968). When applying *Terry* principles, our supreme court has said: "For a traffic stop to comport with the reasonableness requirement of the constitutional guarantees, the police officer must have at least reasonable, articulable suspicion that a violation of the law has occurred." (Internal quotation marks omitted.) *People v. Gaytan*, 2015 IL 116223, ¶ 20, 32 N.E.3d 641. Discussing *Gaytan*, this court explained how a "reasonable, articulable suspicion" means the officer *effectuating* the stop "must have a particularized and objective basis for suspecting the particular person stopped was violating the law." (Internal quotation marks omitted.) *People v. Hill*, 2019 IL App (4th) 180041, ¶ 17, 123 N.E.3d 1236 (citing *Gaytan*, 2015 IL 116223, ¶ 20), *aff'd on other grounds*, 2020 IL 124595). This is a less exacting standard than probable cause, and such stops are evaluated objectively. We are to consider the facts available to the officer at the moment of the stop and whether they would "warrant a man of reasonable caution in the belief that the action taken was appropriate," considering the totality of

the circumstances. (Internal quotation marks omitted.) *People v. Timmsen*, 2016 IL 118181, ¶ 9, 50 N.E.3d 1092. In other words, "when evaluating the validity of the stop, [the reviewing courts] consider the totality of the circumstances—the whole picture." (Internal quotation marks omitted.) *Timmsen*, 2016 IL 118181, ¶ 9.

¶ 22    The Supreme Court of the United States recently reaffirmed this reasonable suspicion standard necessary for vehicle stops. *Kansas v. Glover*, 589 U.S. ___, ___, 140 S. Ct. 1183, 1187 (2020) ("[T]he Fourth Amendment permits an officer to initiate a brief investigative traffic stop when he has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' " (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981))). We find the Court's instruction illuminating here. In *Glover*, 589 U.S. at ___, 140 S. Ct. at 1186-87, a deputy sheriff ran a license plate check on a vehicle, found the owner to have a revoked license, and stopped the vehicle. The Court held the vehicle stop reasonable. Considering the totality of the circumstances—namely the computer database information coupled with the deputy's reasonable, commonsense inference that the vehicle owner was driving his car with a revoked license—the Court found the deputy possessed reasonable suspicion Glover was engaged in criminal activity. Discussing the "reasonable suspicion" standard, the Court reiterated: "The standard depends on the factual and practical considerations of everyday life on which *reasonable and prudent men*, not legal technicians, act." (Emphasis in original and internal quotation marks omitted.) *Glover*, 589 U.S. at ___, 140 S. Ct. at 1188 (citing *Ornelas v. United States*, 517 U.S. 690, 695 (1996)). The Court echoed the long-standing principle that the reasonable suspicion standard sets a lower bar than either the probable cause or preponderance of the evidence standards, instructing, "[t]he reasonable suspicion inquiry 'falls considerably short' of 51% accuracy

[citation] for, as we have explained, 'to be reasonable is not to be perfect.' [Citation.]" *Glover*, 589 U.S. at ___, 140 S. Ct. at 1188.

¶ 23 Heeding the Court's guidance, we turn to the case before us. The State argues defendant did not make a *prima facie* showing the traffic stop was unlawful and, by contrast, the testimony produced at the suppression hearing was sufficient to establish reasonable suspicion for the traffic stop. We agree.

¶ 24                                 C. Anonymous Tip

¶ 25 Although much has been made by defendant regarding an "anonymous tip," in reality, other than the suggestion by defendant's counsel at the suppression hearing, there is no evidence in this record the call to dispatch was anonymous. Deputy Lewallen said he received his information from dispatch and did not know who gave the information to them. Deputy Burgener said she did not know who called the sheriff's office and suggested there may be a record of who called dispatch. It was only after counsel suggested, "[c]ould it have been an anonymous caller?" the deputy said it "could have been." Regardless, the legality of the stop is not necessarily based on the original source of the information but instead on the objective reasonableness of the officer's actions based on the facts available to him at the time of the stop. See *People v. Dunmire*, 2019 IL App (4th) 190316, ¶ 40. Deputy Lewallen knew the following at the time of the stop: (1) a caller who was familiar with the "Redding brothers" and a local bar named Sliderz called the sheriff's department to report a fight; (2) the caller knew enough about the situation to describe the fight as being between the brothers themselves at the bar; (3) dispatch considered the information sufficiently reliable to warrant contacting the deputies on duty to advise them of the call and direct them to investigate; (4) the caller was in a position to tell dispatch that one of the brothers had left the scene; and (5) the caller provided a description of the vehicle the brother was driving, including

color, make and model. Coupled with that, Deputy Lewallen, searching in the vicinity of the bar within six minutes of the call, came across a vehicle matching the description (color, make, and model) given, which he learned after contacting dispatch was registered to a Redding brother. He then contacted the deputy investigating the fight and learned the deputy wanted the driver detained in order to speak to him about the fight. It is based upon this body of information we are to evaluate the reasonableness of the stop.

¶ 26                                    1. *Practical Pitfalls in Applying* Holmes

¶ 27            Even if we accepted defendant's (and the trial court's) premise the call was anonymous, the outcome would be no different. The trial court concluded, "It is well established that an anonymous tip, without more cannot provide a reasonable suspicion of criminal activity," citing the argument made by the defendant in *Holmes*, 2019 IL App (1st) 160987. The court then erroneously said it was the State's responsibility to provide testimony from either Deputy Smith, who was charged with investigating the bar fight, or the dispatcher, in order to test the reliability of the information. First and foremost, the court accepted defense counsel's suggestion the information was anonymous, although that fact is not contained in the record. Regardless, it also ignored the information known to Deputy Lewallen at the time of the stop, which formed the basis for his reasonable suspicion. More importantly, the court shifted the burden to the State prematurely. Had defendant presented testimony the original call was not as represented, or had information that any reasonable police officer would have found suspect, or was never even made, then the State would have been obligated to present evidence to justify the deputy's reliance on the information given. But the defendant did not present such testimony. As noted above, "The officer's conduct is judged by an objective standard, which analyzes whether the facts available to the officer *at the moment of the stop* justify the action taken." (Emphasis in original and internal

quotation marks omitted.) *Dunmire*, 2019 IL App (4th) 190316, ¶ 40 (citing *Hill*, 2019 IL App (4th) 180041, ¶ 17).

¶ 28                                    2. Holmes*'s Legal Deficiencies*

¶ 29          Besides the trial court's practical mistakes, we find its reliance on *Holmes* misplaced, both legally and factually. In *Holmes*, the First District, much like defendant's trial counsel and the trial court here, characterized the information known to officers conducting a *Terry* stop and frisk on a suspected gunman at a large Chicago park gathering as, "effectively," an anonymous tip. *Holmes*, 2019 IL App (1st) 160987, ¶ 2. In reality, the tip had come from a Chicago Park District security guard who told a Chicago police sergeant a man, "described as black, about five-and-a-half feet tall, wearing a purple shirt and black jeans" was in the park with a gun in his pocket. *Holmes*, 2019 IL App (1st) 160987, ¶ 1. The sergeant conveyed the same information to two Chicago police officers, who within two to three minutes found someone matching that description. *Holmes*, 2019 IL App (1st) 160987, ¶ 1. The *Holmes* court ultimately found this "effectively anonymous" tip "did not support a finding of reasonable suspicion" and "reverse[d] the trial court's denial of [defendant's] motion to suppress." *Holmes*, 2019 IL App (1st) 160987, ¶ 18.

¶ 30          In our view, the *Holmes* court unnecessarily provided a novel analysis for "effectively anonymous" informant tips that we find flawed and inapplicable to these facts. First, despite basing its analysis on its conclusion that police acted on an "effectively anonymous tip," the *Holmes* majority routinely noted how the tip was *not actually* anonymous but came from the security guard. See *Holmes*, 2019 IL App (1st) 160987, ¶ 3 (acknowledging that knowing the security guard provided the tip "arguably dissipated the cloud of anonymity"); *Holmes*, 2019 IL App (1st) 160987, ¶ 18 (identifying the tip police acted upon as "the security guard's tip"); *Holmes*,

- 11 -

2019 IL App (1st) 160987, ¶ 21 (stating the tip started with the security guard); *Holmes*, 2019 IL App (1st) 160987, ¶ 41 (noting defendant's acknowledgment that "the tip from the security guard *** [was] not anonymous in a literal sense"); *Holmes*, 2019 IL App (1st) 160987, ¶ 42 (noting again how defendant's "counsel acknowledged that the tip was not literally anonymous"). Besides teetering on a faulty factual foundation, the *Holmes* court built its legal analysis upon a misunderstanding of relevant precedent, namely *Alabama v. White*, 496 U.S. 325 (1990). Citing *White*, the *Holmes* court announced, "An anonymous tip, without more, generally provides 'virtually nothing' by which one could conclude that the tipster is honest, that his or her information is reliable, or that he or she has a basis by which to predict a suspect's criminal activity." *Holmes*, 2019 IL App (1st) 160987, ¶ 22 (citing *White*, 496 U.S. at 329). But, as we see it, this broad statement misunderstands and misapplies *White*—a case the *Holmes* majority found instructive. See *Holmes*, 2019 IL App (1st) 160987, ¶¶ 22, 55. Because we see *Holmes*'s misstatement of *White* as the first domino falling in its flawed analysis, we pause to closely examine *White*.

¶ 31        In *White*, police received an anonymous telephone tip "stating that Vanessa White would be leaving 235-C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attaché case." *White*, 496 U.S. at 327. Police corroborated the tip by finding the brown Plymouth station wagon at the given address, observing the broken taillight, and following the wagon toward Dobey's Motel before conducting a *Terry* stop. *White*, 496 U.S. at 327. After receiving consent from White (the driver), police searched her vehicle and purse and found marijuana and cocaine. *White*, 496 U.S.

at 327. In upholding the *Terry* stop as reasonable and therefore constitutional, the Supreme Court of the United States discussed informants' tips and reasonable suspicion.

¶ 32        Unlike *Holmes*, *White* did not announce a general rule that anonymous tips alone provide "virtually nothing" to determine if the tipster is reliable or if the bases for the tip prove reliable. Instead, *White* quoted the " 'virtually nothing' " language when describing the *specific tip* that included the brown Plymouth, the attaché case with cocaine, and Dobey's Motel. *White*, 496 U.S. at 329 (quoting *Illinois v. Gates*, 462 U.S. 213, 227 (1983)). *White* merely acknowledged tips—anonymous or otherwise—need more. In other words, informants' tips must be corroborated by police in order to establish reasonable suspicion for an investigative stop. See *White*, 496 U.S. at 329-32. And in building on that principle, *White* instructed that the amount of police corroboration necessary to find the tip reliable varies based on whether the police need reasonable suspicion or probable cause to act. See *White*, 496 U.S. at 330 ("Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause."). Once police corroborate the significant information in the tip, the less demanding reasonable suspicion standard is satisfied, and police may make the investigative stop. *White*, 496 U.S. at 332 ("When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop.").

¶ 33        *White* made *no* generalizations that anonymous tips provide us "virtually nothing" to test their reliability. *White* simply instructs that courts must look at the totality of the circumstances, including the quantity and quality of information in the anonymous tip when

deciding if police had reasonable suspicion to conduct a *Terry* stop. More importantly, *White* did not dive into the deep rabbit hole of what it did not know, like precisely how the tipster learned the information or precisely what an officer said to other officers in relaying the tip. Rather, *White* considered the totality of the circumstances—the telephone tip and independent police corroboration—and found those circumstances gave rise to reasonable suspicion—and found the police action constitutional. See *Navarette v. California*, 572 U.S. 393 (2014) (looking at the whole picture, particularly what police corroborated or could infer from an anonymous tip and whether that knowledge established reasonable suspicion under the totality of the circumstances). Interestingly, *Holmes* never mentions, let alone applies, a totality-of-the-circumstances analysis.

¶ 34        We cannot cosign the *Holmes* majority's—and by extension this trial court's— novel "effectively anonymous" informant tip analysis when it proceeds from a misunderstanding and misapplication of precedent. Instead, we find the *Holmes* dissent persuasive. Justice Mason's dissent, in our assessment, correctly focused on the reasonableness of the articulable suspicions held by the officers to whom the information was conveyed by their sergeant when, within a matter of minutes, still in the park, they found a person who matched the rather specific description. When coupled with the observations and information known to the officer by the time of the stop, the dissent in *Holmes* correctly found there was sufficient evidence upon which to conclude the officers had a reasonable, articulable suspicion to warrant the stop of Holmes. " 'We do not view these facts with analytical hindsight but instead consider them from the perspective of a reasonable officer at the time the situation confronted him.' " *Holmes*, 2019 IL App (1st) 160987, ¶ 70 (Mason, P.J., dissenting) (quoting *In re J.J.*, 183 Ill. App. 3d 381, 388, 539 N.E.2d 764, 768 (1989)). Justice Mason's dissent also provided an excellent discussion of burden shifting in suppression hearings, noting, as we have here, defendant had the burden of proof, both at the outset

of the suppression motion and throughout. The State had only the burden of production if defendant was able to establish the unreasonableness of the officer's actions in stopping him.

¶ 35                                                3. *Eyler*

¶ 36            Rather than shoehorn the instant facts into the *Holmes* model, we opt to follow our recent opinion in *People v. Eyler*, 2019 IL App (4th) 170064, because we find it on point and useful. This court listed several factors to consider when evaluating the reliability of an anonymous tip in *Eyler*, including "(1) whether the tip provides a sufficient quantity of information so that the officer may be certain that the stopped individual is the one the tipster identified; (2) the time interval between the officer receiving the tip and locating the suspect; (3) whether the tip is based upon contemporaneous eyewitness observations; (4) whether the tip is sufficiently detailed to permit the reasonable inference that the tipster has actually witnessed a crime; and (5) whether the tip was made to a police emergency number." *Eyler*, 2019 IL App (4th) 170064, ¶ 30 (citing *People v. Shafer*, 372 Ill. App. 3d 1044, 1050, 868 N.E.2d 359, 363 (2007)). There is no question the caller knew the individuals involved; he named them. Further, considering how the deputies testified about "the Redding brothers," it is reasonable to conclude they were already known to police. The caller did not give a physical description but identified them as "the Redding brothers," and that was enough information for the deputies to know for whom they were looking. The caller's description of the vehicle proved correct as to make, model, and color since Deputy Lewallen saw it and confirmed through dispatch it did, in fact, belong to a Redding. The caller's information was such that it was reasonable to believe he or she was present at the bar; he or she knew it was the Redding brothers, knew they were fighting between themselves as opposed to fighting with someone else, knew when one of them left the scene, and described the vehicle in which he left. The call must have been either during or immediately after the fight because they informed

dispatch one had left, and Deputy Lewallen, who received the call at 10 p.m., responded to the area and found defendant and his vehicle at 10:06 p.m. The only factor from *Eyler* not contained in the record is whether the call was placed to a police emergency number; although under the circumstances, it is reasonable to believe it was. Furthermore, the fact the information contained "predictive information" (defendant Redding had left the scene) and "readily observable details" (the description of the vehicle registered to defendant found in the area) the deputies corroborated or confirmed adds reliability. As a result, the information would be deemed even more reliable. See *Eyler*, 2019 IL App (4th) 170064, ¶ 30.

¶ 37        Here, even if we consider this an anonymous tip case, when considering the totality of the circumstances, the information provided by the caller demonstrated "sufficient indicia of reliability" to justify a temporary *Terry* stop for investigative purposes. *White*, 496 U.S. at 327.

¶ 38                                D. Radio Bulletin

¶ 39        In reality, this case hinges on the *content* of the radio dispatch received by the deputies and not its source. The trial court cited *People v. Lawson*, 298 Ill. App. 3d 997, 1001, 700 N.E.2d 125, 129 (1998), for the proposition that, "when the State attempts to justify a warrantless arrest on the basis of a radio bulletin, it must establish that the officer who issued the bulletin had reasonable articulable suspicion to make the stop." The trial court conflated two different standards: reasonable articulable suspicion and probable cause. The correct standard, espoused by *Lawson* when discussing a warrantless arrest, says the State "must establish that the officer who issued the bulletin *had probable cause to effect an arrest*." (Emphasis added.) *Lawson*, 298 Ill. App. 3d at 1001 (citing *People v. Bascom*, 286 Ill. App. 3d 124, 127-28, 675 N.E.2d 1359, 1362 (1997)). The court in *Lawson* went on to say, "[I]f a flyer or [radio] bulletin has been *issued on the basis of* articulable facts supporting a reasonable suspicion that the wanted person has committed

an offense, then reliance on that flyer or bulletin justifies a stop." (Emphasis in original and internal quotation marks omitted.) *Lawson*, 298 Ill. App. 3d at 1004. The United States Supreme Court said so in *United States v. Hensley*, 469 U.S. 221 (1985). There, the Court held an officer could reasonably rely on a radio bulletin issued on the basis of articulable facts supporting a reasonable suspicion in order to justify a *Terry* stop, despite having no personal knowledge of the information that formed the basis of a reasonable suspicion. *Hensley*, 469 U.S. at 232. Illinois courts also permit officers to rely on police radio transmissions to make *Terry* stops even if they are unaware of the specific facts that established reasonable suspicion to initiate the stop. See *People v. Green*, 2014 IL App (3d) 120522, ¶ 30, 19 N.E.3d 13; *People v. Wallace*, 2015 IL App (3d) 130489, ¶ 38, 42 N.E.3d 945; *People v. Maxey*, 2011 IL App (1st) 100011, ¶ 54, 949 N.E.2d 755 (and the cases cited therein). While the information known to Deputy Lewallen may not have been sufficient to justify a warrantless arrest of defendant for the crime of battery, when coupled with the fact that the officer assigned to the bar fight was requesting defendant be detained for questioning about a possible criminal offense, it was sufficient to justify a traffic stop on the vehicle to investigate his involvement in the bar fight at Sliderz. See *Hensley*, 469 U.S. at 232-33 (holding that if a police bulletin was issued from articulable facts supporting reasonable suspicion that the individual committed an offense, the temporary stop based on the bulletin is justified to obtain further information or check identification). "An officer may act on information provided by a third party in making a *Terry* stop, but only if the information provided is reliable and allows an officer to reasonably infer that a person was involved in criminal activity." *People v. Jackson*, 348 Ill. App. 3d 719, 729, 810 N.E.2d 542, 553 (2004) (citing *People v. Lockhart*, 311 Ill. App. 3d 358, 362, 724 N.E.2d 540, 543 (2000)).

¶ 40        A police officer has authority to briefly detain a person for investigatory purposes if the officer reasonably believes that person has committed or is about to commit a crime. *Terry*, 392 U.S. at 21-22. This is exactly what Deputy Lewallen did. He is the officer who made the investigatory stop, not a warrantless arrest for the crime of battery. He was conducting a stop pursuant to an ongoing investigation concerning defendant's involvement in a bar fight that occurred less than 10 minutes before. Deputy Lewallen acted based upon the information from dispatch and at the behest of the investigating officer, who wanted to speak with defendant about the fight. In our view, *Terry* allowed this investigative stop because the information relayed from dispatch led officers to reasonably suspect defendant may have committed a crime. *People v. Close*, 238 Ill. 2d 497, 505, 939 N.E.2d 463, 467 (2010) (citing *Terry*, 392 U.S. at 22). As a result, based on the testimony presented by defendant himself, there was no evidence the information provided to the deputies by dispatch was unreliable or otherwise suspect. Looking at that information objectively, the defendant failed to make a *prima facie* showing the stop was unlawful. Having failed to do so, the trial court erred in granting the suppression motion.

¶ 41                              III. CONCLUSION

¶ 42        For the reasons stated, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

¶ 43        Reversed and remanded.

**No. 4-19-0252**

| | |
|---|---|
| **Cite as:** | *People v. Redding*, 2020 IL App (4th) 190252 |
| **Decision Under Review:** | Appeal from the Circuit Court of Macon County, No. 18-DT-38; the Hon. Erick F. Hubbard, Judge, presiding. |
| **Attorneys for Appellant:** | Jay Scott, State's Attorney, of Decatur (Patrick Delfino, David J. Robinson, and James Ryan Williams, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | James E. Chadd, Catherine K. Hart, and Jessica L. Harris, of State Appellate Defender's Office, of Springfield, for appellee. |