**STATE of Delaware**

v.

**John HEDLEY and Scott Hedley, Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted: June 19, 1990.
Decided: Oct. 5, 1990.

**578**

Kelly J. Sasso, Deputy Atty. Gen., Dept. of Justice, for State of Del.

Eugene J. Maurer, Jr., of Eugene J. Maurer, Jr., P.A., for defendant John Hedley.

David J. Facciolo, Asst. Public Defender, Public Defender's Office, for defendant Scott Hedley.

### OPINION

HERLIHY, Judge.

The matter presently before the Court is John and Scott Hedley's [defendants] motion to suppress evidence seized from their home. A hearing on the motion was held on April 2, 1990. At that time, the Court ordered briefing on the issues presented.

Scott Hedley [Scott] is under indictment for trafficking in marijuana (5–50 lbs.), possession with intent to deliver marijuana, possession of drug paraphernalia and maintaining a dwelling for keeping controlled substances. John Hedley [John] is under indictment for trafficking in cocaine (5–50 grams), possession with intent to deliver cocaine, possession of drug paraphernalia and maintaining a dwelling for keeping controlled substances.

For the reasons stated herein, defendants' motion is GRANTED.

### I. FACTS

On December 2, 1989 between 6:00–6:30 a.m., New Castle County Police officers were dispatched to 808 Way Road, a single family residence located in Hockessin, Delaware. This was in response to a call from The Greenwood Rehabilitation Center that Scott was threatening to commit suicide with a shotgun unless he was taken to a detoxification center. The first to arrive were Officers Hicken and Townley, who noted a light on the first floor. Sgt. Leonard of the New Castle County police arrived soon thereafter. Because of their concern of the possibility of a weapon, the officers requested that RECOM (the police dispatch) call Scott and ask him to meet the officers outside. Scott told RECOM that all he wanted was a ride to a detoxification center. He exited the house several minutes later, unarmed but carrying various toiletries. Just before he came out of the house, the light which had been on switched off. As he exited, Scott closed the front door of the residence.

When the police met Scott, he appeared to be highly intoxicated. He was patted down and placed in a patrol car. Scott did not possess any weapon, shotgun or otherwise. At some point, it was determined that there was an outstanding capias on Scott and he was formally placed under arrest. He and several police officers got into a police car where some questioning occurred.

In response to questions from Sgt. Leonard, Scott stated that he was lying about having a shotgun and further stated that there was no need to check on his roommates. At this point, there was discussion among the three officers about entering the residence. Sgt. Leonard testified that there was no reason to believe anyone else had been hurt. The decision was made to enter the residence purportedly to check on the safety of the roommates and to see if a shotgun could be located.

Sgt. Leonard and Officer Townley approached the door, knocked and entered the residence approximately five-to-fifteen seconds later. Upon entering the unlocked residence, the police came into a common area but subsequently split up to check the inside of the residence. The officers did not have their weapons drawn and announced their presence upon entry. They continued to do so as they moved through the residence. Sgt. Leonard entered into what was later determined to be Scott's bedroom. He then heard voices elsewhere in the house. He apparently discontinued any further search and found Officer

Townley speaking with Ed Godski who also was a resident in the house.

It was during the initial search of the residence that the police discovered the items that were subsequently utilized to obtain a search warrant. In the living room of the residence, the police discovered a marijuana cigarette and rolling papers. In an open bathroom closet, a scale was discovered by Sgt. Leonard. In addition, Sgt. Leonard found what later turned out to be marijuana in Scott's bedroom. Marijuana was discovered on top of the dresser and also in a partially open drawer of the dresser. In addition, upon checking under the bed, Sgt. Leonard discovered a green trash bag with marijuana sticking out of it. There was also money discovered sticking out of a shoe in the bedroom.

As stated above, the aforementioned items were utilized to obtain a search warrant to search for drugs at the 808 Way Road residence. Armed with the search warrant, the police returned and conducted a search which resulted in finding cocaine in the refrigerator in John's bedroom. Also discovered in John's bedroom were a scale and five twenty dollar bills. Further, this second search resulted in additional amounts of marijuana being discovered in Scott's bedroom.

Both defendants claim the initial entry of the residence was illegal. That being the case, the issuance of the search warrant would be improper and any evidence seized pursuant to the warrant must be suppressed. In addition, Scott argues that the knock and announce rule was violated. John argues, as an additional ground for suppression, that the multiple unit dwelling exception applies in the instant case and for that reason, the warrant was fatally flawed.

In response, the State argues that the initial entry was legal due to the exigent circumstances that existed and/or under the protective sweep doctrine. The State also claims that the knock and announce rule was not violated because the police believed a person was injured and time was of the essence. As to the multiple dwelling exception, the State argues that the 808 Way Road residence was a single family dwelling and does not fall within the exception. Additionally, the State disputes John's standing to challenge the entry into the residence. The State claims that John has failed to demonstrate that he had a possessory interest and that he had a legitimate expectation of privacy in the area to be searched. The Court will first address the issue of John's standing to challenge the validity of the entry and search of the residence.

## II. STANDING

In order to have standing to bring a Fourth Amendment challenge, a person must show he has a possessory interest in the items seized and a legitimate expectation of privacy in the area to be searched. *United States v. Salvucci*, 448 U.S. 83, 93, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619, 629 (1980). As to the legitimate interest of privacy, there is no room for doubt in this case. Unlike *Salvucci*, where the evidence was seized from the home of another, in the instant case, the 808 Way Road residence was John's home.[1] The record established that John was a tenant and lessee of the property and, further, the police were informed by Ed Godski (also a resident of the property) that he and John occupied the 808 Way Road residence with Scott. At the risk of being repetitive, it is beyond question that John had a privacy interest in the residence, particularly in his own room.

## III. LEGALITY OF INITIAL ENTRY

The central issue in this case is whether the initial entry into the residence was proper and legal. If the initial entry was legal under the circumstances, the conduct of the police from that point forward was proper. The items that served as the foundation for the issuing of the search warrant were in plain view. During the

---

**1.** The Court notes that it is not a necessity to establish that a residence is, in fact, one's home to establish the existence of a legitimate expectation of privacy. *See Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990).

course of a legitimate warrantless search, the police may seize any evidence in plain view. *Mincey v. Arizona,* 437 U.S. 385, 393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300 (1978), *see also Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). The suspected marijuana discovered in the residence was immediately recognizable as contraband. Further, the scale discovered was, to an experienced police officer, the type used by drug dealers and, therefore, there existed a probability the scale would be useful as evidence of a crime. Thus, the plain view doctrine would apply in this case. *See Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

If such items (the marijuana and scales) could be properly seized, it is not a quantum leap of logic to realize that these items could be utilized to secure a search warrant. On the other hand, if the initial entry was illegal, there would be no evidence in plain view and, therefore, no basis upon which the search warrant could be issued. In that event, not only would those items discovered in plain view need to be suppressed, the evidence seized pursuant to the search warrant would necessarily be suppressed under the fruit of the poisonous tree doctrine. *See Wong Sun v. U.S.,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

As John's counsel correctly points out, the State is, in fact, arguing two distinct exceptions to the search warrant requirement. First, by relying on *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), and other mostly Ninth Circuit cases, the State seeks to invoke the "protective sweep" exception to justify the initial entry into the 808 Way Road residence. *See* 2 W. LaFave, *Search and Seizure,* § 6.4(c) (2d ed. 1987). Second, the State seeks to justify the warrantless entry by relying on an exigent or emergency circumstances exception, in that the police entered the residence out of concern for the safety of a person within. *See Search and Seizure, supra,* at § 6.6(a). While

these exceptions may overlap, to some extent, and some authorities have not always distinguished the two, the exceptions are distinct. Further, the underlying purpose and legal grounding of each exception differs. Each of the two exceptions will be discussed below.

### A. Protective Sweep

▮▮▮▮ In *Buie,* the Supreme Court held that:

[A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Buie,* 494 U.S. at ——, 110 S.Ct. at 1098, 108 L.Ed.2d at 286.[2] In reaching this conclusion, the Supreme Court analogized the protective sweep search to the type of search without a warrant authorized in *Michagan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) and *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Long* and *Terry,* the focus was on "the immediate interest of the police officers in taking steps to assure themselves that the persons with whom they were dealing were not armed with or able to gain immediate control of a weapon that could unexpectedly and fatally be used against them". *Buie,* 494 U.S. at ——, 110 S.Ct. at 1097, 108 L.Ed.2d at 285. The *Buie* court went on to explain that the potential dangers to the officers is even higher in the situation of the protective sweep. This is because of the serious step of taking a person into custody and the disadvantage to police of being on the ad-

---

**2.** In *Buie,* the police had an arrest warrant for armed robbery for the defendant and went to his house. While inside, they discovered he was in the basement. To make sure no one else was in the basement, an officer went down and observed, in plain view, clothing similar to the clothing involved in the two robberies.

versary's turf. *Id.* at ——, 110 S.Ct. at 1098, 108 L.Ed.2d at 285.

The State has also cited *United States v. Hoyos,* 868 F.2d 1131, 1138–39 (9th Cir. 1989) for the proposition that even if a person is arrested outside the residence, a protective sweep inside can still be legal. There is nothing contained in *Buie* that necessarily rejects the general proposition of *Hoyos.* In essence, this is because the respondent in *Buie* was, in fact, arrested inside the residence and the issue need not have been addressed to decide the case. However, by implication, it would seem that if the arrest occurs outside the residence, a protective sweep would only be legal if the officers have articulable facts which, taken with the logical implications therefrom, would lead a reasonably prudent officer to believe the area to be searched harbors a person or persons that posed danger to those on the arrest scene. *Buie,* 494 U.S. at ——, 110 S.Ct. at 1098, 108 L.Ed.2d at 285. The "protective sweep" is not automatic. It may "be conducted only when justified by a reasonable, articulable suspicion that the house is harboring a person posing a danger to those on the arrest scene." *Id.* at ——, 110 S.Ct. at 1099, 108 L.Ed.2d at 287.

*Buie* authorizes under a proper protective sweep only a cursory inspection, basically one where a person may be found. Here, defendants do not challenge the extent of the officers' search or that they observed articles not in plain view. Therefore, they are not challenging whether the protective sweep search was or was not cursory. Their challenge is to the efficacy of the initial entry.

In the instant case, no facts exist that support the invocation of the protective sweep exception to the search warrant requirement. It is clear from the testimony of the officers that none of them feared for their own safety. The police did not immediately enter the residence on Scott's departure. In fact, none of the officers drew their weapons when they entered the residence, nor did they immediately enter the house after Scott came out. The series of Ninth Circuit cases cited by the State are inapplicable to this case. In the main, those cases dealt with known major traffickers in narcotics and, further, dealt with persons the police reasonably believed had violent tendencies and/or were potentially armed. *See Hoyos,* 868 F.2d at 1137; *United States v. Castillo,* 866 F.2d 1071, 1078–79 (9th Cir.1988) and *United States v. Gardner,* 627 F.2d 906, 910–911 (9th Cir. 1980). These factors did not exist prior to the entry of the police. In the instant case, there are no facts that could possibly lead a reasonably prudent officer to believe that the residence at 808 Way Road harbored a person or persons that posed a threat to the police or anyone else at the arrest scene.

The initial entry into the residence cannot be justified under the protective sweep doctrine.

### B. Emergency Circumstance

 The State also argues that the initial entry into the residence was proper based on the possibility that someone within may have been injured and in need of aid. This is the type of emergency or exigent circumstance addressed in *Patrick v. State,* Del.Supr., 227 A.2d 486 (1967).

In *Patrick,* the Delaware Supreme Court stated:

> The right of police to enter and investigate in an emergency, without an accompanying intent either to seize or arrest, is inherent in the very nature of their duties as peace officers, and derives from the common law. The preservation of human life is paramount to the right of privacy protected by search and seizure laws and constitutional guaranties; it is an overriding justification for what otherwise may be an illegal entry. It follows that a search warrant is not required to legalize an entry by police for the purpose of bringing emergency aid to an injured person. [Citations omitted.]

*Id.* at 489. The police were summoned to an apartment where the defendant resided. Another person had found the victim in that apartment in a bloody mess and called the police. When the police arrived, they were told the victim had a head wound and

might be dead. They immediately entered the apartment.

Both defendants seemingly attempt to limit the exception in *Patrick* only to the situation where police have credible information that an unnatural death has or may have occurred. Though any exception to the search warrant requirement must be strictly construed, *see Mincey,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290; *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *United States v. United States Dist. Ct.,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), the above-quoted language from *Patrick* does not indicate such a restrictive reading.

The United States Supreme Court has acknowledged that the police may enter a residence without a warrant when they "reasonably believe that a person within is in need of immediate aid". *Mincey,* 437 U.S. at 392, 98 S.Ct. at 2413, 57 L.Ed.2d at 300. Further, many state and federal courts recognized the propriety of this type of warrantless entry prior to *Mincey. Id.* at 392, fn. 6 & 7; 98 S.Ct. at 2413, 57 L.Ed.2d at 300 and also subsequent to *Mincey. See also State v. Jennings,* R.I.Supr., 461 A.2d 361, 366 (1983); *State v. Magnano,* 204 Conn. 259, 528 A.2d 760, 764 (1987); *Commonwealth v. Maxwell,* 505 Pa. 152, 477 A.2d 1309, 1315 (1984). None of the case law indicates that the police need wait for a situation to escalate to a potential death before the situation may be considered an emergency. What is required is a reasonable belief that someone is in need of immediate assistance, not that a person has died or may have died an unnatural death.

■ When the police enter a home without a search warrant under the claim of emergency or exigent circumstances, the burden is on the State to demonstrate the existence of such circumstances. *Mason v. State,* Del.Supr., 534 A.2d 242, 248 (1987). The burden is on the State because "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively

unreasonable." *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 651 (1980) [footnote omitted].

■ Where a warrantless entry is proper under the emergency, the police may seize evidence that is in plain view. *Mincey,* 437 U.S. at 393, 98 S.Ct. at 2413, 57 L.Ed.2d at 300. The question now becomes whether the State has met its burden of demonstrating that the police had a reasonable belief that someone within 808 Way Road was in need of immediate aid? It must be emphasized that the fact that, as it turned out, no one was injured is of no moment. Likewise, the fact that no shotgun was discovered inside the residence is of no moment. To consider these factors, the Court would be delving into improper hindsight. *See Patrick,* 227 A.2d at 489; *Castillo,* 866 F.2d at 1079.[3] In evaluating the police conduct, the Court must focus on the totality of the circumstances that the police faced prior to the decision to enter the residence without a warrant. The Court may not properly rely on what was subsequently discovered or not discovered.

The police went to 808 Way Road because of a telephone call by Scott to a detox center threatening to commit suicide unless he was taken there. The police were able to contact him inside the house by phone to ask him to come outside. Shortly thereafter, he came out unarmed and unharmed. He was intoxicated, compliant, even jovial and "packed" to go. During his conversation with the police officers outside the house, he was unhappy about the police going into the house and that may have justified some suspicion on the part of the police.

It is equally important to give consideration to what information the police did not have prior to the decision to enter the residence. The police had no information of any disruption or criminal activity at the residence. The police had no information indicating that Scott had a violent background or a propensity towards violence. Further, after Scott left the house, the

3. Castillo is, of course, a protective sweep case but nevertheless admonition as to improper hindsight applies equally in an emergency circumstances case.

police had no information that anyone inside needed assistance.

This case is no doubt a "close one". The police did have the basis for some suspicion. Such "suspicion" is insufficient to justify the warrantless entry. *See Olson,* 495 U.S. at ——, 110 S.Ct. at 1690, 109 L.Ed.2d at 96. *Payton,* 445 U.S. at 588–89, 100 S.Ct. at 1381, 63 L.Ed.2d at 651–52. However, the Court cannot find that the State has met its burden of demonstrating the existence of a reasonable belief that a person was in need of aid inside the residence. With this ruling, the Court does not mean to imply that the police in any way acted in bad faith, but it must be remembered that an individual expectation of privacy is at its highest when it relates to one's home. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). If the police had not entered the residence and it had turned out that someone inside had needed assistance, many persons would immediately have criticized that decision. Nevertheless, the facts, as they existed prior to entry, do not support a warrantless intrusion into a person's home.

As the initial entry into the home was illegal and the police only discovered the items that support the issuing of a search warrant as a result of that illegal entry, the further search pursuant to the search warrant was also illegal. This being the case, the Court need not consider the claimed violation of the knock and announce rule argued by Scott. Likewise, there is no need to address John's argument that the multiple dwelling exception applies in this case.

Based on the foregoing, the motion of defendant Scott and John Hedley to suppress is hereby GRANTED.