THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE RUSHING, Defendant-Appellant.

First District (3rd Division)   No. 1—92—0877

Opinion filed April 26, 1995.

Michael J. Pelletier and Anna Ahronheim, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Faustmann, and Katherine S.W. Schweit, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

After a jury trial, defendant, Willie Rushing, was convicted of two counts of possession of a controlled substance with intent to deliver. (See Ill. Rev. Stat. 1985, ch. 56$^1$/2, pars. 1401(a)(2), (c).) He was sentenced to 14 years' imprisonment. Defendant now appeals, alleging the following errors: (1) the trial court's denial of his motion to suppress evidence; (2) the trial court's admission of hearsay evidence proffered by the State; (3) the trial court's refusal to instruct the jury on impeachment through prior inconsistent statements; (4) prosecutorial misconduct denying defendant a fair trial; (5) the trial court's imposition of two convictions for simultaneous possession of two controlled substances; and (6) the trial court's consideration that the defendant had probably sold drugs in the past when it imposed its sentence. We reverse the convictions and remand for a new trial.

Initially, we note that when reviewing a trial court's ruling on a motion to suppress, a reviewing court is not limited to the record at the hearing, but may properly consider all evidence adduced at trial. (*People v. Breeding* (1991), 219 Ill. App. 3d 590, 579 N.E.2d 1128.) Accordingly, the facts adduced at the hearing on the motion to suppress and at trial that relate to the search are as follows.

Defendant and his brother, David Austin (Austin), lived in the same apartment building. Defendant maintained an apartment on the second floor and Austin lived below him in an apartment on the first floor. On November 11, 1989, Austin called the police complaining that defendant had hit him and had threatened him with a gun. Chicago police officers Edward Mizera and Wayne Gulliford responded by going to the apartment building where defendant and Austin lived. Austin met them outside and repeated his claim that defendant had pulled a gun on him and had threatened to shoot him. He also told the police that defendant lived on the second floor.

The officers then proceeded to the second-floor apartment and knocked on the door. Defendant's mother answered and allowed the officers to enter. Mizera asked defendant's mother if defendant was in the house. She told Mizera that defendant was in the bathroom. Mizera then knocked on the bathroom door and told defendant to come out. When defendant complied, Mizera patted him down and searched the bathroom for a gun. No gun was found.

By this time three other officers had arrived at the scene and were present in defendant's living room. Also in the living room were defendant, defendant's mother and defendant's father. Together, the officers looked around the apartment for the gun. Again, no gun was found.

Mizera then returned to Austin's apartment to ask him where the gun could be found. Austin responded by telling Mizera that defendant was a drug dealer and keeps all of his "dope" in a toolbox in his bedroom under his bed. Austin then speculated that the gun might also be in the toolbox, which was red. Hearing this, Mizera returned to the defendant's apartment and instructed Gulliford to look for a red toolbox under defendant's bed. Gulliford found the red toolbox under the bed and brought it to the dining room. The officers opened it. Mizera testified that he had no warrant, received no consent, but felt he had probable cause to search it. Inside the red toolbox the officers found quantities of cocaine, heroin, and $2,017 in cash. No gun was found. The police, with defendant, who was now under arrest, left the apartment.

Once in the squad car, the police read defendant his *Miranda* warnings. Defendant said he wished to talk, and did so, telling the officers that he had people working for him on the streets but refused to tell them the source of the drugs.

Defendant moved before trial to have the cocaine, heroin and $2,017 suppressed on the basis that this evidence was obtained pursuant to a warrantless search and that no exception to the warrant requirement was applicable. The trial court denied defendant's mo-

tion. The court did not state upon which exception to the warrant requirement it based its ruling. Defendant now appeals, arguing that the trial court's denial of his motion to suppress was error.

■ The fourth amendment of the United States Constitution reads:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV.

This means, among other things, that a search is unconstitutional if executed without a warrant, absent certain well-defined exceptions. (*Katz v. United States* (1967), 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514.) Once a defendant challenges a warrantless search, it becomes the State's burden to show that the search falls into one of the well-defined exceptions. (See *People v. Foskey* (1990), 136 Ill. 2d 66, 75, 554 N.E.2d 192, 196.) If the State fails to meet its burden, the evidence seized during the search shall be suppressed at trial.

The State, in attempting to shoulder its burden, argues that no warrant was required to search the red toolbox because the search fell within an exception to which it refers at various times as "protective sweep" and "exigent circumstances." These terms, however, are not interchangeable. Rather, they provide for two exceptions to the warrant requirement which are quite distinct from one another. No matter which exception the State intended to assert, the State puts forth only one factual scenario to justify the search of the red toolbox. In its brief the State argues:

> "To have walked away from the situation and left the gun where it was secreted would have left the officers facing an unknown peril both with regard to those who remained in the apartment and during their departure from defendant's home. After all, defendant's family remained behind and were not likely pleased that one of their own was being taken away in police custody. The search in the toolbox was necessary to ensure that the gun was located before the officers left. The discovery of the drugs, in plain view at that point, could be seized despite the fact that their discovery was not inadvertent."

Because it is unclear upon which exception the State relies and upon which exception the trial court based its ruling, we will consider the State's argument under both the protective sweep and the exigent circumstances exceptions.

■ A protective sweep was defined by the United States Supreme Court in *Maryland v. Buie* (1990), 494 U.S. 325, 108 L. Ed. 2d 276, 110 S. Ct. 1093. There, the court said:

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." (*Maryland v. Buie*, 494 U.S. at 327, 108 L. Ed. 2d at 281, 110 S. Ct. at 1094.)

Moreover, the Court held that neither probable cause nor reasonable suspicion is required in a protective sweep analysis. (*Maryland v. Buie*, 494 U.S. at 334, 108 L. Ed. 2d at 286, 110 S. Ct. at 1098.) Rather, the proper standard to be applied is whether the searching officer possessed "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. at 334, 108 L. Ed. 2d at 286, 110 S. Ct. at 1098.[1]

According to the court, the rationale for allowing a protective sweep is that it occurs inside a home and at a time when a suspect is being, or has just been, arrested. (*Maryland v. Buie*, 494 U.S. at 333, 108 L. Ed. 2d at 285, 110 S. Ct. at 1098.) Because the arrest is being made on the suspect's "turf," police officers have an interest in making sure that other persons from within the home do not launch an unexpected attack. *Maryland v. Buie*, 494 U.S. at 333, 108 L. Ed. 2d at 285, 110 S. Ct. at 1098.

■ On the other hand, exigent circumstances allow for a warrantless search when "there is compelling need for official action and no time to secure a warrant." (*Michigan v. Tyler* (1978), 436 U.S. 499, 509, 56 L. Ed. 2d 486, 498, 98 S. Ct. 1942, 1950.) Additionally, unlike the protective sweep exception, a search made pursuant to exigent circumstances requires probable cause.

■ In the case at bar, neither the facts nor the credibility of the witnesses is questioned. Accordingly, whether circumstances existed to justify a warrantless search is a question of law and our review of the trial court's determination is made *de novo*. See *People v. Foskey* (1990), 136 Ill. 2d 66; 554 N.E.2d 192.

■ After a careful review of the record, we find absolutely no evidence in the record which would support a finding of a reasonable

---

[1]We recognize that the search in *Maryland v. Buie* was made pursuant to an arrest warrant, while no such warrant existed in the case at bar. We, nonetheless, believe the analysis in *Maryland v. Buie* has equal application to the case at bar.

search, whether couched in terms of "a protective sweep" or in terms of "exigent circumstances." Plainly, the circumstances surrounding the search disqualify it from the protective sweep exception. Referring to the definition articulated by the Supreme Court in *Maryland v. Buie,* the search of the red toolbox was not incident to arrest, it was not conducted to protect the safety of the officers and it was not narrowly confined to a cursory visual inspection of those places in which a person may be hiding.

By the time the officers had searched the red toolbox, they had already searched defendant for the gun, searched the area under the immediate control of defendant, and made a cursory examination of the apartment for the gun. If there was a protective sweep in this case, this was it. Furthermore, a sweep lasts only as long as is necessary to dispel the reasonable suspicion of danger. (*Maryland v. Buie,* 494 U.S. at 335-36, 108 L. Ed. 2d at 287, 110 S. Ct. at 1099.) After this initial search, any danger would have been dispelled and any further search could not be justified as being made incident to defendant's arrest. The officers were not satisfied with their search up until this point, however, and enlisted the help of the complainant, defendant's brother, who suggested that the officers look in the red toolbox where defendant kept his "dope."

The State argues the continued search was necessary to protect the safety of the police officers. The record, however, is devoid of any evidence to support the State's claim that defendant's family posed any danger to the officers. There is no evidence that the defendant's mother or father was violent, hostile or anything but accommodating to the officers. In fact, defendant's mother allowed the officers to enter the apartment and informed them where they could find her son, who was hiding in the bathroom.

Furthermore, it is equally clear that the officers themselves perceived no threat by leaving the apartment with defendant under arrest while defendant's family may have had access to a loose gun. In fact, that is exactly what they did; they left the apartment with defendant under arrest without ever locating a loose gun. If the officers were truly motivated to search the red toolbox out of fear for their safety, they surely would have continued their search after the search of the red toolbox failed to turn up a gun. Any danger posed by a loose gun which existed before the search of the red toolbox necessarily existed after the search of the red toolbox; after all they still had not found the so-called loose gun. The only thing which had changed was now the officers had discovered evidence of another crime. Apparently, with this new discovery in hand, the officers were content to leave the apartment with defendant under arrest, leaving behind a loose gun. Perhaps most telling of all, no officer testified at

either the hearing on the motion to suppress or at trial that he searched the red toolbox because of a concern for his safety. We simply do not give credence to the State's argument that the search of the red toolbox was conducted "to protect the safety of police or others."

Finally, and once more referring to the Supreme Court's definition of a protective sweep, it goes without saying that the search of the red toolbox was not "narrowly confined to a cursory visual inspection of those places in which a person may be hiding."

Because we hold that the search of the red toolbox was not a protective sweep, we never arrive at the question of whether the searching officer had the proper level of justification, *i.e.*, whether he possessed "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." See *Maryland v. Buie*, 494 U.S. at 334, 108 L. Ed. 2d at 286, 110 S. Ct. at 1098.

A claim of exigent circumstances, likewise, must fail. Here, the only scenario alleged by the State to justify the search is that defendant's mother and father posed a threat to the officers. As discussed above, there is no evidence that defendant's family posed a danger to the officers or that any other exigency existed. Because no exigency existed, just as in the protective sweep analysis, we never arrive at the question of proper justification.

By trying to couch the search of the red toolbox in terms of a protective sweep or in terms of exigent circumstances, the State is essentially trying to place a square peg in a round hole. Fourth amendment constitutional analysis, however, has not created a hole in the misshapen form of this search. Instead, fourth amendment analysis has fashioned a remedy for searches such as this, and it is called suppression.

For the foregoing reasons, we conclude that the warrantless search of the red toolbox was neither conducted as a protective sweep nor made pursuant to exigent circumstances. The trial court, therefore, erred when it denied defendant's motion to suppress the cocaine, heroin and $2,017 in cash. Accordingly, we reverse defendant's conviction and remand for a new trial at which the cocaine, heroin and $2,017 in cash shall be suppressed.

In light of our decision, we find it is unnecessary to address defendant's other allegations of trial error concerning the use of hearsay, the court's refusal to instruct the jury on prior inconsistent statements, and an amalgam of other errors which it is contended cumulatively denied defendant a fair trial.

For the foregoing reasons, we reverse defendant's conviction and remand for a new trial.

Reversed and remanded.

TULLY and CERDA, JJ., concur.