LEE, J.,
for the Court:
¶ 1. Stanley Joshua McNeil was convicted of one count of armed robbery, and two counts of aggravated assault. Feeling aggrieved, Joshua[1] has filed a timely appeal. Although Joshua has enumerated eight issues for our review, seven of the eight issues address the denial of his motion to suppress; therefore, we have consolidated the issues into two: (1) whether the trial judge erred when she denied Joshua’s motion to suppress evidence and (2) whether the verdict was against the overwhelming weight of the evidence. Finding these issues without merit, we affirm the rulings of the trial judge, as well as McNeil’s sentence.
FACTS
¶ 2. Richard Gookin was the owner of Dick’s Barber and Style located at the Appleridge Shopping Center in Jackson, Mississippi. Mr. Gookin testified that a young man entered his barber shop with a firearm. It was later asserted by police officers that this young man was Stanley Joshua McNeil. Gookin explained that at the time Joshua entered the shop he had panty hose on his head and was wearing dark clothes. Joshua was wearing a shirt with a hood on it and had the hood pulled over his head.
If 3. Joshua pointed the firearm at Mr. Gookin and asked for his billfold. Mr. Gookin told him to leave the barber shop. Mr. Gookin refused to give Joshua his billfold. Although the sequence of these events are somewhat unclear, it is clear that Joshua hit Mr. Gookin on his head and face and knocked him to the ground. Thereafter, Joshua shot the gun which struck a patron named Mr. Spille in the leg. Subsequently, the firearm jammed. Once Mr. Gookin was on the ground, Joshua reached in his pocket and took his wallet and exited the barber shop.
¶ 4. Mr. Gookin estimated that at the time Joshua took his wallet there was approximately $185 to $250 in the wallet, as well as such items as his driver’s license, credit cards, and photographs.
¶ 5. Mr. Spille and Ms. Smart, a hair stylist at the barber shop, were in the barber shop at the time of the robbery. Their testimony reiterated the testimony that had been given by Mr. Gookin.
¶ 6. Officer Tamara Milliken with the City of Jackson Police Department explained that she was made aware of the *769 armed robbery at the barber shop during roll call at the police station. It was at this time that she received a description of what the assailant was wearing.
¶ 7. Later that same day, Officer Milliken was called upon to assist in executing an arrest warrant for Samuel McNeil, Sr., the father of Joshua McNeil and Samuel Nicholas McNeil. The arrest warrant stated that McNeil, Sr. resided at 1079 McDowell Road which was also the residence of Joshua and his brother Nicholas. Accordingly, several police officers arrived at this address to execute the arrest warrant.
¶8. Upon the police officers’ arrival, they first encountered Nicholas. The police officers explained to him that they were there to execute an arrest warrant for his father, McNeil, Sr. At this time, they asked Nicholas if anyone was at home and he replied that no one was at home. Nonetheless, the police officers continued to talk with Nicholas. While having a discussion with Nicholas, they heard noises coming from inside the house. Thereafter, Nicholas gave the police officers permission to go inside the house.
¶ 9. Once inside the house the police officers began to “clear” the house which meant that the officers went from room to room in the house to make sure there was no one in the house that had a weapon or other instrument that could harm them. Officer Milliken accepted the duty of clearing the rooms. While clearing the house, the police officers discovered Joshua in the bathroom. While Officers Sansom and Camel were talking with Joshua, Officer Milliken went to clear the back bedrooms.
¶ 10. Once inside Joshua’s room Officer Milliken saw a hooded black zip-up jacket and black pants. Officer Milliken felt the jacket and pants and noted that they were damp. Milliken stated that she felt the pants because they matched the description of the suspect in the robbery of the barber shop which occurred approximately an hour and a half earlier. Officer Milliken continued the search and went to clear Nicholas’s room.
¶ 11. While in Nicholas’s room Officer Milliken searched the closet to see if there might be someone hiding inside. She discovered no one. However, when she was exiting the room Officer Milliken saw the butt of a firearm and a wallet between a speaker and the wall. Officer Milliken explained that upon examination of the firearm she noticed that it was an automatic weapon and it had a stove pipe casing. This meant the casing had flipped and stuck in the firearm and another bullet could not be fired. The wallet contained Mr. Gookin’s driver’s license. The wallet also contained forty-two dollars. Once Officers Sansom and Camel had Joshua out of the bathroom, Officer Milliken cleared it.
¶ 12. Officer Milliken searched behind the shower curtain and found no one. While clearing the bathroom, Officer Mil-liken discovered $181 on the floor near a laundry hamper. Officer Sansom added to the testimony of Officer Milliken by describing the confrontation that occurred in the bathroom with Joshua.
¶ 13. Officer Sansom stated that Joshua was instructed to stop washing the tennis shoes he was cleaning in the sink and to step out of the bathroom. Joshua refused to comply. Therefore, the police officers repeated their command for Joshua to come out of the bathroom. Eventually, Joshua stepped into the hallway; however, he ran back into the bathroom and tried to close the door. Whereupon, Joshua jerked his pants down and sat on the toilet, and he was again ordered to exit the bathroom. Once Joshua was removed from the bath *770 room Officer Milliken discovered the money on the floor near the laundry hamper.
¶ 14. At trial, Nicholas testified that Joshua had brought the gun and wallet home, and Nicholas had hidden it. However, Nicholas contradicted Officer Milliken’s statement regarding the location of the firearm and wallet. Nicholas stated that the firearm and wallet were under a dresser and not in plain view. Additionally, Nicholas stated that Joshua was wearing a white tank top and some blue jeans when he gave him the firearm and wallet.
¶ 15. Harriet Bennington, part owner of a party store located on McDowell Road, stated that the store was located across the street from the Appleridge Shopping Center where the barber shop was located. Bennington said that she knew Joshua. Not only did Joshua live two houses away from her store, but he also worked for her. Bennington testified that on the day in question she had seen Joshua early to mid-afternoon walking behind Appleridge Shopping Center. Bennington recalled Joshua was wearing a wind breaker at the time she saw him.
¶ 16. Essie Buckley, Joshua’s grandmother, testified that he could not have committed the crime because she was with him at the time the crime was alleged to have happened.
¶ 17. Joshua testified on his own behalf and asserted that he found the firearm and wallet on a lawn when he was going to see his friend Bobbie. Joshua denied committing the crime.
DISCUSSION
I. WHETHER THE TRIAL JUDGE ERRED WHEN SHE DENIED JOSHUA’S MOTION TO SUPPRESS EVIDENCE.
¶ 18. Prior to trial, Joshua filed a motion to suppress seeking to have the firearm, wallet, as well as all other evidence seized in the search by the police officers ruled inadmissable at trial. Joshua asserts that the trial judge erred when she denied his motion to suppress because the evidence was obtained without a search warrant or his consent, and by using his father’s arrest warrant as a pretext to search the house. Therefore, the evidence was improperly obtained and should have been suppressed.
¶ 19. The standard of review regarding a trial-judge’s ruling at a suppression hearing is whether substantial credible evidence was present to support the trial judge’s finding when evaluating the totality of the circumstances. Price v. State, 752 So.2d 1070, 1073(¶ 9) (Miss.Ct. App.1999). However, before this Court reviews the trial judge’s ruling we look to case law to determine if the police officers performed a legal seizure.
If 20. In Maryland v. Buie, the United States Supreme Court addressed the legality of a protective sweep. Maryland v. Buie, 494 U.S. 325, 328,110 S.Ct. 1093,108 L.Ed.2d 276 (1990). Police officers had an arrest warrant for Buie who was believed to have been involved in a crime. Id. While arresting Buie the police officers performed a protective sweep in conjunction with the arrest which revealed incriminating evidence. Id. The police officers went to Buie’s house and arrested him. Id. In conjunction with the arrest, a search of the basement was also conducted. Id. A red running suit which fit the description of what one of the suspects was wearing was found in plain view by the police officer. Id. The trial court denied Buie’s motion to suppress and the running suit was admitted into evidence. Id. Buie was convicted. Id. On appeal to the United States Supreme Court, Buie argued that the search was illegal and that the evidence *771 should have been suppressed. Id. at 330-31,110 S.Ct. 1093.
¶ 21. The United States Supreme Court held “that as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched.” Id. at 334,110 S.Ct. 1093. Beyond that, however, the court held that “there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.” Id.
¶ 22. We are aware that in the case at bar, unlike in Buie, the arrest warrant was not for Joshua but was for his father; nevertheless, we find this of no consequence. Testimony was given at the motion to suppress hearing from one of the police officers that was there to execute the arrest warrant on the day in question. This officer stated that he had had a prior situation regarding an arrest warrant for McNeil, Sr.
¶23. The police officer explained that in the past he had served an arrest warrant for McNeil, Sr. and had found him at 1079 McDowell Road; however, the officer had some difficulty in serving the warrant. When serving the previous warrant, the officer asked if McNeil, Sr. was at home and he was told he was not there. Subsequently, the officer made a sweep of the house and found McNeil, Sr. standing in a bedroom.
¶ 24. On the day in question, the officer was once again told that McNeil, Sr. was not at the house. In fact, Nicholas, Joshua’s brother, had told the police officers that no one was in the house. Nevertheless, the officers heard noises coming from inside the house.
¶25. Nicholas gave the police officers permission to search the house. Additionally, due to the possession of the arrest warrant and past experience, the police officers had a right to believe that McNeil, Sr. might be in the house. Based on the arrest warrant, they had a right to enter the house. Once in the house, the officers were justified in conducting a protective sweep for their safety. The testimony revealed that it was while the police officers were conducting the sweep that they found the items in plain view.
¶26. “It is well established that under certain circumstances the police may seize evidence in plain view without a warrant,” Arizona v. Hicks, 480 U.S. 321, 326, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). However, the police officer is required to have probable cause when seizing the items. Id. In Godbold v. State, the Mississippi Supreme Court acknowledged that “[t]he United States Supreme Court stated, ‘[i]t has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence.’ ” Godbold v. State, 731 So.2d 1184, 1190(¶ 24) (Miss.1999) (citations omitted). In this situation, the record reveals that the police officers had an arrest warrant for McNeil, Sr. at the same address for Joshua. There was sufficient evidence presented by the police officers that the items seized were in plain view when found. Additionally, Officer Milliken stated that due to the facts she had been presented with earlier in the day regarding the armed robbery of the barber shop she believed the items seized were involved in the robbery. The firearm was jammed and the wallet contained identification for Mr. Gookin, one of the victims from the robbery of the barber shop.
*772 ¶ 27. At the conclusion of the hearing for Joshua’s motion to suppress the trial judge ruled as follows:
The Court takes judicial notice that the brother, Nicholas McNeil, gave testimony at the time that he pled guilty to the charges in this case. The officers have indicated that they did have consent to search, even though they were there to serve a warrant on McNeil, Sr. What has been stated by officers has been confirmed by Stanley Nicholas McNeil with regard to giving them consent; additionally, with regards to how the money, the $181, a gun and a wallet that belonged to one of the victims in the alleged robbery.
The court finds that there was probable cause for the search after the officers arrived at the premises of 1079 McDowell Road. The conduct, erratic, nervous and suspicious behavior of Joshua McNeil warranted the search, in addition to his lunging for the bed, and that the search normally would have been one performed by the officers in a sweep to determine the safety of their presence in the residence. As such, the Court is going to deny the motion to suppress the evidence in this case. That evidence will be like other evidence, available to be presented at trial, and the Court will determine its admissibility at that time.
¶ 28. It is apparent from the case law that the seizure was lawful. Additionally, the facts presented and considered by the trial judge in her ruling were based on substantial credible evidence. Accordingly, this issue is without merit.
II. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 29. Joshua argues that the trial judge erred when he denied the motion for a new trial because the facts presented at trial would not allow a reasonable hypothetical juror to find him guilty. Joshua asserts that the only reason he was convicted was because of the evidence submitted from the search and seizure.
¶30. In Benson v. State, 551 So.2d 188, 193 (Miss.1989), the Mississippi Supreme Court provided the following explanation of when it would grant a new trial:
This [cjourt will not order a new trial “unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice.” Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). Factual disputes are properly resolved by the jury and do not mandate a new trial. Temple v. State, 498 So.2d 379, 382 (Miss.1986).
A motion for a new trial is within the sound discretion of the trial court. Burge v. State, 472 So.2d 392, 397 (Miss.1985). It must be kept in mind that any discrepancies were properly resolved by the jury as fact finder because questions regarding weight and worth of witness testimony or witness credibility are for the jury to settle. Eakes v. State, 665 So.2d 852, 872 (Miss.1995). This Court accepts as true all evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial. Id.
¶31. Since this Court determined in issue one that the evidence was legally obtained and admissible this argument does not merit further discussion. Additionally, although the recitation within the “facts” section of this opinion shows there was conflicting evidence, upon reviewing all of the evidence we find that the trial court did not abuse its discretion in denying the motion for new trial. Accordingly, this issue is without merit.
*773 ¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF COUNT I, ARMED ROBBERY AND SENTENCE OF TWENTY FIVE YEARS; COUNTS II AND III, AGGRAVATED ASSAULT AND SENTENCES OF TWENTY YEARS WITH FIVE YEARS SUSPENDED AND TWO YEARS SUPERVISED PROBATION EACH, WITH SENTENCE IN COUNT I TO RUN CONSECUTIVELY WITH SENTENCES IN COUNTS II AND III WHICH RUN CONCURRENTLY TO EACH OTHER AND CONSECUTIVELY WITH SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, MYERS, CHANDLER AND BRANTLEY, JJ, CONCUR.
IRVING, J., CONCURS IN RESULT ONLY.

. We refer to Stanley Joshua McNeil as Joshua due to the fact that we will be referring to three individuals bearing the last name of McNeil in this opinion. We will be mentioning not only Joshua, but also his brother Samuel Nicholas McNeil (i.e., Nicholas) and their father Samuel McNeil, Sr.