**STATE of Minnesota, Respondent,**

v.

**Daniel James BERGERSON, Appellant.**

**No. A03–112.**

Court of Appeals of Minnesota.

Oct. 28, 2003.

Charles A. Ramsay, Rebecca Rhoda Fisher, Ramsay, DeVore, Olson, P.A., Roseville, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Robert M.A. Johnson, Anoka County Attorney, Robert D. Goodell, Assistant County Attorney, Anoka, MN, for respondent.

Considered and decided by WRIGHT, Presiding Judge, and HARTEN, Judge, and G. BARRY ANDERSON, Judge.

## OPINION

HARTEN, Judge.

Appellant was convicted of conspiracy to commit first-degree controlled substance crime. In a direct appeal, he challenges the district court's denial of his motion to suppress evidence obtained as a result of the protective sweep search conducted immediately after his arrest. In his associated postconviction appeal, appellant contests the summary denial of his petition for relief for ineffective assistance of counsel. Because we see no valid basis for suppressing the evidence and no abuse of discretion in the denial of the postconviction petition, we affirm.

## FACTS

Two Anoka County deputies attempted to execute an arrest warrant on appellant Daniel Bergerson. When the deputies arrived at appellant's parents' residence, a rural farmhouse, they followed a driveway leading to an unattached pole barn near the house because they saw that the overhead, garage-style door of the barn was raised about four feet from the ground.

The deputies approached and peered under the open door into the pole barn. Both saw an individual from the waist down who was standing near a vehicle. The deputies announced their presence and one knocked on the service door adjacent to the overhead door. The other deputy noticed the individual's feet turn away from the doorway. After the deputies called out several times, a man emerged from underneath the overhead door and identified himself as John Hanson. He was the subject of an arrest

warrant for traffic violations and was immediately taken into custody.

The deputies asked Hanson if appellant was inside the pole barn. Hanson denied that appellant was in the pole barn and gave other evasive answers. After Hanson was told that he could be charged with aiding and abetting for lying, he admitted that appellant was inside the pole barn. The deputies placed Hanson in one of the squad cars and called for backup.

Several minutes later, the deputies returned to the overhead door and shouted for appellant to come out. When appellant came to the door, the deputies arrested him. After appellant was secured by other officers, two deputies returned to the pole barn to make sure no one else remained inside. They searched the interior of the pole barn and the vehicles inside it. Both deputies had their service revolvers drawn during the search, which lasted two to four minutes. The deputies found no other persons, but they observed evidence indicating the manufacture of methamphetamine, which was later used to convict appellant.

Appellant and Hanson were charged with conspiracy to commit controlled substance crime in the first degree (manufacture of methamphetamine). Appellant moved to suppress the evidence obtained from the pole barn on the ground that the deputies' initial search of the pole barn violated the Fourth Amendment. The district court denied appellant's motion, finding that the deputies had a reasonable

suspicion that someone else was in the pole barn. Appellant was convicted; he petitioned for postconviction relief. The district court denied the petition without a hearing. Appellant challenges the validity of the search of the pole barn and the denial of his motion.

## ISSUES

1. Was the initial search of the pole barn justified as a protective sweep search?

2. Did the postconviction court abuse its discretion in denying appellant relief based on ineffective assistance of counsel?

## ANALYSIS

### 1. Protective Sweep Search

■ When reviewing pretrial orders on motions to suppress evidence where the facts are undisputed, we may independently review the facts to determine, as a matter of law, whether evidence need be suppressed. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992).

The validity of a "protective sweep" search is an issue of first impression in Minnesota.[1] Relying on *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), the district court determined that the deputies' initial search of the pole barn met the criteria of a "protective sweep" exception to the warrant requirement under the Fourth Amendment. We agree.[2]

1. However, the Minnesota Supreme Court declined to address whether a cursory search to prevent the destruction of evidence constituted a protective sweep because the officers had probable cause to search the premises. *State v. Alayon*, 459 N.W.2d 325, 330 (Minn.1990).

2. As a threshold matter, appellant argues that we need not reach a reasonable suspicion analysis under *Buie* because the deputies could have safely departed with him and Han-

son once they were in custody. But the deputies' reasonable suspicion of danger continued after appellant was taken into custody. *See United States v. Henry*, 48 F.3d 1282, 1285 (D.C.Cir.1995) (recognizing that although officers could have left, they would then have become targets for any armed persons who remained in the building); *see also United States v. Boyd*, 180 F.3d 967, 975 (8th Cir. 1999) (fact that defendant was in custody

*Buie* recognized that officers have an interest in taking steps to assure that the area where a suspect is arrested, or was recently arrested, does not harbor other individuals who could be dangerous and capable of aggression. *Buie*, 494 U.S. at 333, 110 S.Ct. at 1097–98. This interest justifies a limited intrusion such as taking reasonable steps to ensure officer safety; this intrusion is comparable to the reasonable steps the police may take to neutralize the dangers of making on-the-street investigative encounters or roadside investigatory stops. *Id.* at 333, 110 S.Ct. at 1098.

■■■ *Buie* authorized two types of protective searches in conjunction with an arrest. The first type permits officers who have neither probable cause nor reasonable suspicion to look in spaces immediately adjoining the place of arrest, such as closets, "from which an attack could be immediately launched." *Buie*, 494 U.S. at 334, 110 S.Ct. at 1098. The second type involves searches of areas near, but not immediately adjoining, the place of arrest. The reasonable articulable suspicion standard applies to these searches:

[T]here must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene. This is no more and no less than was required in *Terry* [*v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] and [*Michigan v.*] *Long* [463 U.S. 1032, 103 S.Ct. 3469 (1983)], and as in those cases, we think this balance is the proper one.

*Id.* A protective sweep search is limited and "may extend only to a cursory inspection of those spaces where a person may be found." *Id.* at 335, 110 S.Ct. at 1099. The time frame of the search is also limited; it may last no longer "than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id.* at 336, 110 S.Ct. at 1099.

■■■ The *Buie* standard for protective sweep searches has been routinely utilized in the federal circuits and adopted in many states.[3] We are persuaded that the ratio-

does not invalidate an otherwise justified sweep).

**3.** *See, e.g., United States v. Gould*, 326 F.3d 651, 654 (5th Cir.2003); *United States v. Cavely*, 318 F.3d 987, 995 (10th Cir.2003); *United States v. Boyd*, 180 F.3d 967, 975 (8th Cir. 1999); *United States v. Chaves*, 169 F.3d 687, 691 (11th Cir.1999); *Sharrar v. Felsing*, 128 F.3d 810, 822 (3rd Cir.1997); *United States v. Blue*, 78 F.3d 56, 59 (2nd Cir.1996); *United States v. Colbert*, 76 F.3d 773, 775 (6th Cir. 1996); *United States v. Stanfield*, 109 F.3d 976, 980 (4th Cir.1997); *United States v. Burrows*, 48 F.3d 1011, 1013 (7th Cir.1995); *United States v. Ford*, 56 F.3d 265, 266 (D.C.Cir.1995); *Crooker v. Metallo*, 5 F.3d 583, 584 (1st Cir.1993); *United States v. Flippin*, 924 F.2d 163, 165–66 (9th Cir.1991); *People v. Ledesma*, 106 Cal.App.4th 857, 863, 131 Cal.Rptr.2d 249 (Cal.Ct.App.2003); *Unit-*

*ed States v. Harris*, 629 A.2d 481, 483 (D.C. 1993); *State v. Hedley*, 593 A.2d 576, 580 (Del.Super.Ct.1990); *Runge v. State*, 701 So.2d 1182, 1183 (Fla.Dist.Ct.App.1997); *State v. Slater*, 133 Idaho 882, 994 P.2d 625, 629 (Idaho Ct.App.1999), *review denied* (Idaho Mar. 3, 2000); *People v. Rushing*, 272 Ill. App.3d 387, 208 Ill.Dec. 553, 649 N.E.2d 609, 612 (Ill.App.Ct.1995); *State v. Estep*, 753 N.E.2d 22, 26 (Ind.Ct.App.2001); *State v. Luttig*, 54 P.3d 974, 977 (Kan.Ct.App.2002); *State v. Bradley*, 611 So.2d 757, 758 (La.Ct. App.1992); *Dashiell v. State*, 374 Md. 85, 821 A.2d 372, 382 (Md.2003); *Commonwealth v. Bui*, 419 Mass. 392, 645 N.E.2d 689, 692 (Mass.1995); *People v. Cartwright*, 454 Mich. 550, 563 N.W.2d 208, 211 (Mich.1997); *McNeil v. State*, 813 So.2d 767, 770 (Miss.Ct. App.2002); *State v. Roberts*, 957 S.W.2d 449, 452 (Mo.Ct.App.1997); *State v. Olson*, 311 Mont. 270, 55 P.3d 935, 940 (2002); *State v.*

nale underlying the protective sweep search is compelling and that the doctrine is appropriate for application in Minnesota. In accordance with *Buie,* we hold that law enforcement officers may conduct, as a precautionary measure, protective sweep searches of areas immediately adjoining the place of arrest without probable cause or reasonable suspicion to believe criminal conduct is occurring. In addition, we hold that officers may conduct a protective sweep search of areas near, but not immediately adjacent to, the place of an arrest if articulable facts and rational inferences from those facts warrant a reasonable suspicion that the area to be searched harbors one or more individuals who threaten the safety of officers and others at the scene.[4]

■ Appellant argues that in the instant case, the law enforcement officers did not have a reasonable suspicion that another individual was in the pole barn. Specifically, appellant challenges five of the district court's eight factual findings supporting the court's conclusion that there was a reasonable suspicion. Findings of fact are subject to a clearly erroneous standard of review. *State v. Wiernasz,* 584 N.W.2d 1, 3 (Minn.1998) (in mixed questions of fact and law, factual findings are reviewed for clear error and legal determinations are reviewed independently).

■ First, appellant challenges the finding that the deputies knew he had avoided service of the arrest warrant in the past. One deputy testified that he had previously tried to serve the warrant several times; the other deputy testified that he had twice tried to serve the warrant at appellant's parents' residence; and appellant's father testified that deputies had been to his residence "probably three or four times." Appellant's father also admitted lying to officers by telling them that appellant did not live at his residence. The record supports the finding of avoidance.

■ Second, appellant challenges the finding that the deputies knew of appellant's potential for violence. One deputy testified about a prior domestic incident involving appellant, his then-girlfriend, and some burned clothing at a site that had surveillance equipment and a large dog. While this incident is not direct evidence of appellant's violent nature, it is adequate to support the finding that the deputies knew of appellant's *"potential* for violence" (emphasis added).

■ Third, appellant challenges the finding that the deputies were surprised by Hanson's presence. This finding could easily be inferred from the fact that the deputies were seeking and expecting to find appellant, not another suspect, at his parents' residence. *See State v. Victorsen,* 627 N.W.2d 655, 664 (Minn.App.2001) (due

*Farber,* 1 Neb.App. 460, 498 N.W.2d 797, 800 (1993); *State v. Smith,* 141 N.H. 271, 681 A.2d 1215, 1217 (1996); *State v. Valdez,* 111 N.M. 438, 806 P.2d 578, 580 (1990), *review denied,* (N.M. Feb. 6, 1991); *People v. Febus,* 157 A.D.2d 380, 556 N.Y.S.2d 1000, 1001 (N.Y.App.Div.1990); *State v. Bullin,* 150 N.C.App. 631, 564 S.E.2d 576, 583 (2002); *State v. Lyons,* 83 Ohio App.3d 525, 615 N.E.2d 310, 315 (1992); *State v. Cocke,* 334 Or. 1, 45 P.3d 109, 112 (2002); *Commonwealth v. Taylor,* 565 Pa. 140, 771 A.2d 1261, 1267 (2001); *State v. Meyer,* 587 N.W.2d 719, 724 (S.D.1998); *Reasor v. State,* 12 S.W.3d 813, 815–16 (Tex.Crim.App.2000); *State v. Grossi,* 72 P.3d 686, 689 (Utah Ct.App.2003); *Conway v. Commonwealth,* 12 Va.App. 711, 407 S.E.2d 310, 315 (1991); *State v. Hopkins,* 113 Wash.App. 954, 55 P.3d 691, 694 (2002); *State v. Murdock,* 155 Wis.2d 217, 455 N.W.2d 618, 622 (Wis.1990).

4. For purposes of this opinion, we assume, without deciding, that the sweep search here took place in an area near, but not adjacent to, the place of appellant's arrest, thereby invoking the more strict standard of reasonable suspicion to justify the sweep.

weight must be given to inferences drawn from district court's findings of fact).

■ Fourth, appellant challenges the finding that the deputies perceived facts that inferred methamphetamine manufacturing inside or outside the pole barn. One deputy testified that, when peering underneath the overhead door, he saw a can of acetone, a high-pressure tank, and a fan blowing fresh air into the pole barn. The other deputy testified about an ether-ammonia odor that he noticed before entering the pole barn. This finding supports a reasonable suspicion of methamphetamine involvement.[5]

Finally, appellant challenges the finding that the deputies reasonably inferred that appellant would associate himself with others who engaged in similar behaviors. But the deputies testified that they already knew that appellant was associating with at least one other person and that before Hanson appeared they had perceived evidence that they suspected was linked to the manufacture of methamphetamine. *See Victorsen*, 627 N.W.2d at 664. This finding reflects the deputies' reasonable concern that appellant had sympathetic companions at the scene.

We conclude that, because the district court's factual findings are supported either directly or by reasonable inferences from the evidence, they are not clearly erroneous.

■ Appellant nonetheless argues that, even if the district court's factual findings are not clearly erroneous, they do not support a conclusion that officers had a reasonable suspicion. Courts must look to the totality of the circumstances involved in the case to determine whether the officers had a particularized and objective basis for their suspicions. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002); *see also State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001) (using the totality of the circumstances to determine reasonable suspicion for a traffic stop, including inferences and deductions made by trained and experienced officers).

■ Here, the deputies had a reasonable suspicion that someone sympathetic to appellant who was a threat to their safety was present in the pole barn. The deputies were not expecting to find Hanson in the pole barn, and Hanson was evasive in answering the questions as to whether anyone else was in the pole barn. *See United States v. Brown*, 217 F.3d 605, 607 (8th Cir.2000) (holding that a pause before an answer to officers' questions led to the reasonable suspicion).

■ While both deputies acknowledged that Hanson eventually honestly named appellant, who was inside the pole barn, they could not have known this until after their protective sweep search. Given appellant's potential for violence, Hanson's evasive answers, and the evidence of methamphetamine manufacturing, we conclude that the deputies had a reasonable suspicion that another individual who posed a danger to the deputies' safety was inside the pole barn.[6]

5. The parties neither raised nor litigated whether there was probable cause to enter the pole barn.

6. Both parties brought motions to strike. Appellant moves to strike portions of respondent's brief, claiming that factual assertions were not supported by the record. We conclude that the assertions that appellant wants stricken are adequately addressed in appellant's challenges to the district court's factual findings, are supported by the record, or are simply irrelevant and immaterial, and therefore deny the motion.

Respondent moves to strike the portion of appellant's reply brief, in which appellant argues for the first time that, even if the protec-

### 2. Ineffective Assistance of Counsel

The decisions of a postconviction court will not be disturbed absent an abuse of discretion. *Dukes v. State*, 621 N.W.2d 246, 251 (Minn.2001). Claims of ineffective assistance of counsel are reviewed under a two-pronged test of deficiency and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn.2003).

Under the deficiency prong, appellant has the burden of showing by a preponderance of the evidence that his counsel's performance fell below an "objective standard of reasonableness." *Dukes*, 621 N.W.2d at 252 (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064). "In Minnesota, an attorney acts within the objective standard of reasonableness when he provides his client with the representation of an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under the circumstances." *State v. Doppler*, 590 N.W.2d 627, 633 (Minn.1999) (quotation omitted).

Appellant argues that his counsel's performance was deficient in not eliciting specific information as to the layout of the pole barn during the omnibus hearing. But trial counsel has broad discretion to determine trial tactics, including decisions of what evidence to present. *Id.* Moreover, "[a]ppellate courts, which have the benefit of hindsight, do not review for competency matters of trial strategy." *Id.*

As to the prejudice prong, appellant is required to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. This determination requires courts to consider the totality of the evidence received. *Id.* at 695, 104 S.Ct. at 2069. Appellant argues that, if the specific information regarding the dimensions and layout of the pole barn had been presented to the district court, his motion to suppress could have been granted. We disagree. Evidence of the dimensions and layout of the pole barn was presented during the omnibus hearing, and the district court's finding of reasonable suspicion was based on many factors other than the layout of the pole barn.

The postconviction court did not abuse its discretion in summarily denying appellant's petition.

### DECISION

The deputies articulated a reasonable suspicion that other dangerous individuals remained inside the pole barn following appellant's arrest, which justified their search of the pole barn as a protective sweep within the exception to the warrant requirement. The evidence found in the pole barn was lawfully admitted into evidence. The failure of appellant's trial counsel to elicit certain testimony was a tactical decision that, in any event, would not have altered the result.

**Affirmed; appellant's motion to strike denied; respondent's motion to strike granted.**

tive sweep search was justified by reasonable suspicion, the scope of the search exceeded what is permitted under the protective sweep exception outlined in *Buie*. We do not address this argument because it was not raised in the district court. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn.1996) (This court will generally not consider matters not argued and considered in the district court.). *See also*, Minn. R. Civ.App. P. 128.02, subd. 3 (an appellant may not raise a new issue in a reply brief). We therefore grant the motion to strike.